## Louise M. Karr et al., Appellees, v. Lee Rust, Conservator, Appellant.

1. DIVORCE, § 64*—*conclusiveness of decree.* A court retains jurisdiction of a divorce proceeding at all times to enforce, adjust or modify an original decree in regard to the payment of alimony and custody of children as circumstances may subsequently demand.

2. DIVORCE, § 35*—*what is extent of jurisdiction on supplemental bill.* The circuit court has no jurisdiction on a supplemental petition in a divorce suit to enforce the specific performance of a contract between the divorced wife and the divorced husband which seeks to make a testamentary disposition of the funds of the husband in the hands of a conservator of the estate of the husband, the latter having been adjudged a spendthrift, and requires that such conservator pay the trust funds in his hands to a third person, not for the benefit of the divorced wife or the children during minority, but for the benefit of the children on the husband's death.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. CONTRACTS, § 108*—*when contract of spendthrift is void.* Under Rev. St. ch. 86, sec. 14 (J. & A. ¶ 7298), a contract between one who has been adjudged a drunkard and spendthrift and his divorced wife for the payment to a third person for the benefit of his wife and children of funds in the hands of his conservator, is void *ab initio*.

4. CONTINUANCE, § 10*—*when continuance is proper.* On a petition for a decree to compel a conservator to pay over trust funds, where the conservator has given large bonds, the amount involved is large, the matter at issue is important and no harm will result from a temporary postponement, such postponement may properly be allowed on motion of the conservator, supported by proper affidavits, on the ground that he is prevented from attending the hearing by reason of the serious illness of one of his children.

5. CONTRACTS, § 8*—*what is effect of uncertain contract.* A contract between one who has been adjudged a drunkard and spendthrift and his wife for the payment of funds in the hands of his conservator to a third person for the benefit of the wife and children, *held* so uncertain, ambiguous and inconsistent as to be of doubtful enforceability.

Appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded with directions. Opinion filed April 27, 1920.

A. E. and R. C. DE MANGE, for appellant.

COSTIGAN & WOLLRAB, LIVINGSTON & WHITMORE, M. A. BRENNAN and JOHN M. SULLIVAN, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

In June, 1911, William Elder Karr owned a farm in McLean county, in this State, of the value of about $50,000. He had previously also contracted to purchase 774 acres of land located in California for the sum of $50,310, the purchase price thereon to be paid by instalments at certain intervals. This contract had a forfeiture clause providing that if he failed to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

make any of the stipulated payments it would become null and void, and all previous payments would be forfeited. He had paid instalments thereon amounting to about $23,000, leaving a balance of over $27,000 due and unpaid. His other indebtedness also amounted to about $27,000. He had become a drunkard and a spendthrift, and was in danger of losing all of his property on account of his dissipation. On June 10, 1911, he conveyed, by deed of trust, to Lee Rust as trustee, the farm in question together with all his personal property of every kind, for the purpose of preserving the same and for the necessary support of himself and family, and for the purpose of paying, securing or refunding any and all indebtedness theretofore incurred. To further enable Rust to discharge his trust, Karr and his then wife, Louise B. Karr, assigned the contract for the purchase of the California land to Rust as trustee, September 18, 1911. On October 17, 1911, his wife, Louise B. Karr, also conveyed all her right, title and interest in and to the property of her husband to said Rust as trustee. On September 18, 1911, Karr was adjudged a drunkard and a spendthrift by an inquisition and Rust was appointed conservator of his estate by the county court of McLean county.

Rust, as conservator, by order of the county court, sold the farm in McLean county, and after applying sufficient of the proceeds of the sale to the outstanding indebtedness of Karr, paid the balance on the purchase price of the California land. The California land was finally paid for by Rust personally borrowing sufficient money to complete the payments, and in 1918, by order of the county court, he sold the California land and after paying the moneys advanced by him and all other indebtedness, costs and expenses had a net balance of $32,393.89 as the principal of the trust estate.

In the meantime, Louise B. Karr, on January 11,

1913, obtained a decree of divorce from her husband. By this decree Rust, as conservator of her husband's estate, was ordered to pay to her $100 per month alimony for the support of herself and their two sons.

During the interval between the sale of the lands in McLean county and the sale of the land in California, the conservator had no funds wherewith to pay the alimony so that on November 14, 1918, the unpaid instalments thereon had accumulated until they amounted to $4,100. On October 7, 1918, Karr and his divorced wife, said Louise B. Karr, executed a written agreement as follows:

"Whereas, William Elder Karr and Louise B. Karr, his divorced wife, have entered into an agreement this 7th day of October, A. D. 1918, in settlement of all their rights and interests of every kind and description and,

"Whereas, it has been agreed that the said William Elder Karr is to pay to the said Louise B. Karr the sum of $13,750.00 in full settlement of all her rights, interests and claims that she may have or that she may hereafter have against the said William Elder Karr or his estate, and property, and,

"Whereas, as a part consideration of said settlement the parties hereto have agreed to set aside $10,000.00 for the benefit of their children in some bank or with some person to be designated by the County Judge of McLean County, Illinois, as follows:

"The said William Elder Karr is to deposit and set aside the sum of $6.700.00 as aforesaid, and the said Louise B. Karr is to deposit and set aside the sum of $3,300.00 as aforesaid. It is further agreed that the said Louise B. Karr is to receive the interest from the said $3,300.00 so deposited as her own property during the lifetime of the said Louise B. Karr, subject to the rights of her children, namely Roy Warfield Karr and Porter Wakefield Karr as hereinafter stipulated.

"It is understood and agreed that the said William Elder Karr is to receive the interest and income from

the said $6,700.00 during his lifetime as his own property, except as the right of his children, may interfere as hereinafter stipulated.

"It is understood and agreed between the parties hereto that in no event or under no circumstances is the said Louise B. Karr to have any right or interest in the sum of $6,700.00 or any account as divorced wife, widow or legal representative of the said William Elder Karr, and it is also agreed that the said William Elder Karr in no event is to have any interest or right or claim in the said $3,300.00 as divorced husband of the said Louise B. Karr.

"It is further understood and agreed between the parties hereto that if either of said parties should die during the lifetime of their children or either of them, then and in that case the amount so deposited by the party deceased shall go to the said children or the surviving child as their absolute property.

"It is further understood and agreed that the said children above referred to are not to have any interest in the sum of $6,700.00 so deposited by the said William Elder Karr, except as may be agreed upon by the said William Elder Karr, or the County Court of McLean County, Illinois.

"It is further understood and agreed between the parties hereto that the said children above referred to are not to have any interest in the sum of $3,300.00 so deposited by the said Louise B. Karr, except as may be agreed upon by the said Louise B. Karr, or the County Court of McLean County, Illinois.

"Witness our hands and seal in triplicate this 11th day of October, A. D. 1918, at Bloomington, Ill.

William Elder Karr.
Louise B. Karr."

On November 14, 1918, Louise B. Karr filed a petition in the original divorce suit, in which many of the facts above narrated are set forth, and in which it is further averred that the conservator has not paid the said sum of $13,750 in accordance with the above contract nor the accrued alimony of $4,100, and concludes with a prayer for a supplemental decree requiring the

conservator to pay to her the said sum of $13,750, in full settlement of her alimony and interest in the estate of Karr, and in full discharge of all her property rights. On December 20, 1918, while said petition was pending and before there had been any hearing thereon, the court entered an order directing the conservator to pay to her the unpaid alimony $4,100, which was done. The conservator answered the petition, and in his answer, among other things, averred that he had never approved the contract executed by his ward and that the same was void because executed by one under disability and without the approval or consent of his conservator.

When the petition came up for hearing before the court, a child of the conservator was seriously ill and the former's presence was required at his home, and he could not appear in court. His counsel made a motion for a postponement of the hearing until his client could be present, which was supported by proper affidavits, including one from the physician in charge. The conservator had given large bonds both as trustee and as conservator, the amount involved in the proceeding was large, the matter at issue was important, and no harm could have resulted to any one in interest by a temporary postponement of the hearing. The court might have granted the motion with the utmost propriety under the circumstances, but he overruled the same and proceeded with the hearing by taking testimony without the presence of the conservator.

The court entered a decree directing, among other things, that Karr pay to Louise B. Karr, $13,750, less $4,500 accrued alimony theretofore paid; that Rust as conservator pay to said Louise B. Karr $9,250, and pay to the Peoples Bank of Bloomington, as trustee, $6,700 out of the funds of Karr; that the net interest and profits on the sum of $6,700 be paid to Karr during his lifetime, conditioned, however, that

if either of said sons by reason of misfortune should come to want, or should require the same for their proper maintenance and support, that the interest or principal of the same might be used for them, and upon the death of said Karr the said sum of $6,700 to become the absolute property in fee simple of said sons, or the survivor of them, and that said bank as trustee make report from time to time to the court of its acts and doings in handling said trust fund. Thus it will be seen that the court created a new trust in the sum of $6,700, funds belonging to the estate of Karr, in which neither his divorced wife nor his children had any interest and over which the county court had exclusive jurisdiction.

Several collateral questions have been presented and argued in the briefs of counsel which, from the view we take, it will not be necessary to mention. The main question in controversy is whether the court could in the original divorce proceeding enter a decree for the specific performance of this alleged contract. Alimony is allowed under the laws of this State for the maintenance and support of the wife and the children during their minority, and it is unquestionable that a court retains jurisdiction of a divorce proceeding at all times to enforce, adjust or modify an original decree in regard to the payment of alimony and the custody of children as circumstances may subsequently demand. The contract in question here, however, is not confined to the payment of alimony and the custody of children. It provides that Karr shall not only pay to Louise B. Karr, his divorced wife, $13,750, in full settlement of all her rights, interests and claims that she may have against him or his estate, but also that he shall deposit $6,700 in some bank or with some person to be designated by the county court of McLean county, he to receive the interest on the same during his lifetime and on his death the principal sum so deposited to go to

his children.   By this próvision an attempt is made
to make a testamentary disposition of the estate of
Karr.   It compels the conservator to pay money, in
his hands as such, to a third party, not for the benefit
of the divorced wife nor for the benefit of the two
children during their minority but for the benefit of
the children at Karr's death.   These funds are held
by the conservator pursuant to his trust as such con-
servator for the benefit of his ward, and even the
county court would have no authority to compel him
to make a testamentary disposition of the estate of
his ward, and neither does the circuit court have
jurisdiction on a supplemental petition in a divorce
suit to decree the specific performance of such a con-
tract.

The contract itself is void *ab initio.*   Section 14,
ch. 86, Rev. St. (J. & A. ¶ 7298) provides as follows:
"Every note, bill, bond or other contract by an idiot,
lunatic, distracted person or spendthrift, made after
the finding of the jury, as provided in section 1 of
this act, shall be void as against the idiot, lunatic, dis-
tracted person, drunkard or spendthrift, and his es-
tate."   If a drunkard and spendthrift who has been
found upon inquisition to be incapable of managing
or caring for his own estate should be permitted to
make contracts disposing of his estate, the statute
would be nullified and have no force whatever.   There
would be no object in appointing a conservator for
the estate of such a person if the latter could, with-
out restriction, dispose of his property by contract or
otherwise as he saw fit.

This alleged contract is also so uncertain, ambigu-
ous and inconsistent in its terms that it is question-
able whether it could be enforced between the parties
even if one of them had not been under disability.

A motion has been made by appellee, Louise B.
Karr, to affirm the decree on the ground that it was
taken merely for delay and to put her to unnecessary

cost and expense. This motion was taken with the case and is hereby denied.

The decree of the circuit court is reversed and the cause remanded with directions to dismiss the petition for want of equity.

*Reversed and remanded with directions.*