## B. A. Knight, Appellant, v. Frank M. Blumenshine, Appellee.

## Gen. No. 7,679.

1. INCOMPETENTS AND DELINQUENTS—*when contract with spend-thrift void.* Under Cahill's St. ch. 86, ¶ 14, an attorney, who makes a contract for fees on shares with one who has been legally declared a spendthrift, is bound thereby, but contract is void as to the spendthrift.

2. INCOMPETENTS AND DELINQUENTS—*when contract with spend-thrift not ratified.* A contract void because made by a spendthrift under legal disability is not ratified by his turning over money payable under the contract to the other party immediately upon being restored to his rights.

Appeal by plaintiff from the Circuit Court of Winnebago county; the Hon. EARL D. REYNOLDS, Judge, presiding. Heard in this court at the October term, 1926. Affirmed. Opinion filed December 17, 1926. Rehearing denied February 1, 1927.

B. A. KNIGHT, *pro se;* JOHN R. SNIVELY, of counsel.

LARGE & RENO, for appellee.

MR. PRESIDING JUSTICE PARTLOW delivered the opinion of the court.

Appellant, B. A. Knight, filed his bill in the circuit court of Winnebago county against appellee, Frank M. Blumenshine, for the cancellation of a certain contract, and for an accounting to ascertain what amount, if any, was due appellant upon the cancellation of the contract. Appellee filed an answer. There was a hearing in open court before the chancellor and a decree was entered finding that the contract was void from the beginning; that it had never been ratified by appellee; that there was due from appellant to appellee $763.27. From that decree this appeal has been prosecuted.

On October 7, 1920, appellee, in the county court of Winnebago county, was declared a spendthrift, and the Peoples Bank & Trust Company of Rockford, Illinois, was appointed as his conservator and continued to act until July 22, 1925.

There is evidence tending to show that all of the time appellee was under disability, appellee made contracts for his own employment, performed services, collected his pay, carried on his personal business in the same manner as he had done before he was declared a spendthrift, and at no time did his conservator attend to his personal affairs.

During the period of disability appellee applied to appellant, who was a lawyer, for assistance in being restored to his legal rights. He called at the office of appellant many times to consult him with reference to this matter. Appellant claims that appellee represented that he, appellee, had been induced to convey his interest in two houses and lots in Washington, Illinois, which he had inherited from his father; that he had received no consideration for the conveyance and he wanted suit brought to recover his share of the property. One time during the period of disability, appellee wanted appellant to bring suit against his conservator and its attorney to recover money which they had received for services on the ground that appellee was illegally placed under disability because of the fact that the jury which heard his case was composed entirely of women. Appellant refused to commence these suits and advised appellee that he should take an appeal from the judgment of the county court. Appellee tried to raise money to pay the costs of an appeal but was unable to do so. Appellant claims that appellee requested him to say nothing about the Washington, Illinois, property to his conservator or to its attorney, for the reason that he was afraid his conservator would try to defeat the restoration of appellee to his legal rights.

On March 27, 1925, while appellee was still under conservatorship, appellant entered into a written contract with appellee which purported to employ appellant as attorney to represent appellee in an attempt to be restored to his legal status. Appellee was to pay appellant 25 per cent of all of his estate for such services. The conservator was not consulted with reference to this contract and knew nothing about it at the time it was signed.

On May 27, 1925, appellee filed a petition to be restored to his rights and for the removal of the conservator. On June 8, 1925, the conservator entered its appearance and waived service. On June 16, 1925, there was an uncontested hearing and the jury returned a verdict finding appellee should be restored to his rights under the statute and that the conservator should be discharged. On July 22, 1925, a written order was filed in court to that effect.

At that time all the property of appellee consisted of $1,236.08 in cash. On the same day the order was entered, the conservator gave appellee a check for the amount due, which check was cashed by appellee and the money taken to the office of appellant. Appellant kept $1,000 and gave the balance of $236.08 to appellee, together with a receipt which stated that the $1,000 was to apply on his contract for attorney's fees. Appellant told appellee that his total charge for services was $1,146.50, and that appellee might pay the balance of $146.50 as soon as he was able. Appellant retained the $1,000 for several weeks and then informed appellee that he had made a mistake, that his total charge was $838.29, and that appellee was entitled to a rebate of $161.73, which was subsequently paid to appellee by appellant. There is evidence tending to show that after this payment was made, appellee endeavored to get appellant to return some of the money, had an attorney demand that appellant pay the balance of the

money less a reasonable fee for his services, and that appellant refused to pay.

Appellant claims that at no time did appellee raise any point about the invalidity of the contract and did not do so until he had received substantially all of the benefits under the contract with appellant. After appellee was restored to his rights, he and appellant went to Washington, Illinois, to investigate the facts concerning the two houses and lots. Later appellee planned to make a trip to Washington and Pekin, Illinois, with appellant for the purpose of commencing an action to recover this property. The evidence shows that prior to the appointment of the conservator, the Washington, Illinois, property had been conveyed by appellee together with other heirs, and that the transaction had been entirely closed before that proceeding.

Appellant claims that the settlement of $838.27 included 25 per cent of the value of appellee's interest in the Washington property; that he first figured the value of the two houses and lots at $13,332, one-fourth of which belonged to appellee. Later he claims he discovered there were six heirs interested in the property instead of four and that he divided the value of the property at Washington into six parts and retained one-fourth of the value thereof.

Appellee testified that he told appellant nothing about the houses at Washington, Illinois, before or at the time the agreement for attorney's fees was signed, and that he never told appellant he would give him 25 per cent of the value of the property at Washington, Illinois. The evidence tends to show that appellee had never received an education beyond the eighth grade and was not acquainted with business methods. He had worked on a farm since boyhood, was an ex-service man, and had been in poor health.

Upon the hearing appellant testified that he wanted the contract canceled and he wanted the court to determine whether he was to have any pay under the con-

tract, and if so, he wanted an accounting to ascertain how much was to be paid; that upon the cancellation of the contract he was willing to return to appellee any money that was due, and that his services were worth $200. Several witnesses testified to the value of the services performed by appellant. The evidence showed that he was only engaged in the trial of the case in the proceeding to have the conservator discharged for a period of about two hours. Some of the witnesses testified that he was not entitled to any compensation, while others testified that he was entitled to from $50 to $75. Outside of his own testimony appellant offered no evidence as to the value of the services. The decree found the value of the services were $75, which amount deducted from the $838.27, which appellant had received, left $763.27 which appellant was ordered to pay appellee, and the decree found that the contract was void and that it had never been ratified.

Many questions are argued by appellant why the decree should be reversed. It is not necessary to consider them in detail for the reason that a general statement of the law and facts is sufficient to determine the correctness of the decree entered by the trial court.

Section 14, chapter 86, of the statute [Cahill's St. ch. 86, ¶ 14] provides that every contract made by a spendthrift, after the verdict of a jury, shall be void as against the spendthrift, but the person making any contract with such spendthrift shall be bound thereby. In *Bradshaw v. Lucas*, 214 Ill. App. 218; *Karr v. Rust*, 217 Ill. App. 555; *Sheldon v. Eakle*, 251 Ill. 369, the rule is announced in accord with the provisions of the statute. Therefore, in this case, the contract entered into was void from the beginning except that appellant was bound thereby.

Appellant contends that this contract could be ratified by appellee and was ratified by him after he was restored to his rights. Several cases are cited in sup-

port of the contention that the contract could be ratified but upon examination it will be found that these . are cases under the statute on insanity and not cases where a conservator had been appointed. It is not necessary for us to determine whether the contract could have been ratified for the reason that the chancellor found that the contract had not been ratified and we agree with that finding.

The evidence shows that immediately upon the order being filed restoring appellee to his rights that he went to the bank, got the money, and paid it to appellant. Up to the moment the order was filed, the contract was not voidable but was void and was of no force and effect. There is an entire absence of any evidence of any act on behalf of appellee or appellant which shows, or even tends to show, that after appellee was restored to his rights and before the money was paid, that he ratified this contract and sought to carry out its provisions. On the contrary the evidence shows that the contract at all times was considered by appellant as binding not only upon himself but also upon appellee, and that he carried out its provisions and collected the money on the theory that the contract was a valid and binding instrument. This theory is erroneous, and is not in accord with the evidence which sustains the finding of the chancellor that the contract was void and that it never was ratified after appellee was restored to his rights and before the money was paid.

If the contract was void and was never ratified, the question is whether appellant was entitled to any compensation for his services. The bill was filed upon the theory that appellant wanted the contract canceled. He asked the court to determine what amount he would be entitled to receive as compensation for his services. His testimony was that his services were worth at least $200. On the other hand, the evidence shows that the services rendered were worth from $50

to $75. The court allowed $75, and ordered appellant to pay the balance to appellee. The decree finds that the contract was void from the beginning, was never ratified, and appellant is ordered to pay $763.27, each of which findings is correct and sustained by both the law and the evidence and the decree will be affirmed.

*Decree affirmed.*