Mary Lang Cummer, Appellee, v. William M. Cummer, Appellant.

Gen. No. 38,018.

Opinion filed December 30, 1935.
Rehearing denied January 11, 1936.

CARPENTER, NELTNOR & SCOLNIK, of Chicago, for appellant; CHARLES E. CARPENTER and JOHN C. MELANIPHY, of Chicago, of counsel.

WILLIAM C. GREATMAN and ABRAHAM W. BRUSSELL, both of Chicago, for appellee; ABRAHAM W. BRUSSELL, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

Defendant, William M. Cummer, had been residing with his daughter, Lang Cummer, at Nice, France, for about two years prior to October 25, 1929. On that date plaintiff, Mary Lang Cummer, his wife and the mother of Lang Cummer, was granted a divorce from him and $66,000 in settlement of her property rights, the care, custody and control of the child, Lang Cummer, then 13 years of age, being awarded to defendant, the court finding that he "is a fit and proper person to have the care and custody of said child and that, because of defendant's greater financial ability to maintain and educate her, the best interests of said child would be served" by awarding her custody to her father. The Chicago law firm of Butler, Lamb, Foster & Pope (hereinafter sometimes referred to as the Butler firm) was retained by Squire, Sanders & Dempsey, attorneys at law of Cleveland, Ohio, to rep-

resent Cummer, then in Europe, in the divorce proceedings. Cummer's appearance in the divorce suit was filed by the Butler firm October 22, 1929. On the same day that firm filed an answer admitting the marriage, the birth of the child and its custody by defendant, but denying the allegations of plaintiff's bill charging desertion. Counsel stipulated that the cause might be heard upon bill and answer as in case of default.

January 24, 1934, plaintiff, without attempting to personally notify defendant, then in Europe or Africa, served the then Butler firm with notice of her intention to file a petition for the modification of the decree of October 25, 1929, as to the custody of the child and for other relief. She was granted leave to file her petition and thereafter up to and including July 30, 1934, numerous judgments and orders, some of which were for injunctions, were entered by the trial court directed at defendant or his property.

October 9, 1934, defendant, upon due notice to plaintiff's solicitor, was granted leave to file his petition to vacate all the judgments and orders for injunction or otherwise entered since the filing of plaintiff's petition to modify the original decree, on the ground that the court lacked jurisdiction to enter same without notice to him. The court ordered defendant's petition to stand as an answer to plaintiff's petition of January 24, 1934, and set the cause down for hearing on its merits. October 11, 1934, plaintiff moved to strike defendant's petition of October 9, 1934, for insufficiency in law. October 25, 1934, defendant filed an additional petition supplementary to his petition of October 9, 1934, and plaintiff's motion to strike defendant's petition of October 9, 1934, was allowed to stand as a motion to strike his additional petition. November 30, 1934, plaintiff's motion to strike defendant's petition of October 9, 1934, as well as his additional petition of October 25, 1934, to vacate all the orders and judgments entered pursuant to plaintiff's

petition of January 24, 1934, was sustained by the chancellor on the ground of the insufficiency of such petitions.

This appeal seeks to reverse the last mentioned order of November 30, 1934, and all judgments and orders entered by the trial court subsequent to the filing of plaintiff's petition of January 24, 1934, to vacate or modify the original decree of divorce entered October 25, 1929.

Plaintiff's petition of January 24, 1934, alleged, in substance, that for three years subsequent to the entry of the decree the child, Lang Cummer, lived with her father in Nice, France; that she had been constantly under his supervision, control and domination and had no schooling since she was 14 years of age; that about May, 1933, while his daughter was living with him in Nice, he employed a cook, with whom he committed adultery, and that when his daughter found him in bed with the cook and remonstrated with him, he told her "if she did not like it she knew what she could do"; that the cook remained in the home for about two weeks thereafter, when Cummer took her to Algiers and left his daughter stranded in Nice with no money except what she was able to borrow to get along on; that he returned to Nice from Algiers with the cook in about a month and at that time, although his daughter was ill in a hospital and sent for him, her father did not visit her or pay her hospital bill; that he refused to comply with his daughter's request to send her clothing to the hospital, almost immediately returning to Algiers with the cook, and that Lang had to borrow 5,000 francs to pay her hospital bill; that when Lang left the hospital she learned that her father had gone to Algiers, and, borrowing money to follow him, found him living there at a hotel with the aforementioned cook; that she discussed the situation with her father and he departed for Nice, leaving her with little money; that she remained in Algiers for about three weeks and

in response to a letter to her father requesting money upon which to live, he arranged for an allowance to her of about $40 a month, which was not sufficient to live upon according to her needs and the mode of living to which he had accustomed her; that because of her father's failure to furnish Lang with a passport she was chased from "pillar to post" by the police of Algiers; that she met some English people in Algiers, who took her with them to London since she was without funds to travel and could no longer stay where she was; that shortly after her arrival in England she was arrested for fraudulent entry without a passport and lodged in jail for several days; that, after a trial, she was ordered deported to the United States; that, between the time of her apprehension and deportation, the American embassy and American consul were notified and tried unsuccessfully to locate her father on the Continent to inform him of his daughter's plight; that, finally, plaintiff sent money to London, England, to Lang so that she might return to this country as a first-class passenger rather than in the steerage, where deported persons are usually compelled to travel; that Lang arrived in New York about December 6, 1933, where she remained on funds furnished by plaintiff until January 1, 1934, at which time her mother went to New York and brought her daughter back with her to Chicago; that previous to May, 1933, defendant had spent from $350 to $500 a month for the support of his daughter; that her father failed to support his child since May, 1933, and was liable for her support until July 29, 1934, when she became 18 years of age; that he was reputed to be worth in excess of $1,000,000 and to have an income in excess of $10,000 a month; that he was 67 years old and traveled continuously, wintering during the cold months at Nice or some other place having a warm climate; that Lang Cummer owned and possessed two fur coats, two diamond rings, a diamond

brooch, a Ford automobile and various articles of clothing and personal wearing apparel, which her father took from her and gave to the cook; and that in order to exist since May, 1933, Lang was compelled to borrow 35,000 francs and plaintiff advanced approximately $600 for her support and upkeep.

The prayer of plaintiff's petition was that that portion of the decree of divorce of October 25, 1929, giving the care and custody of the minor child, Lang Cummer, to defendant, be vacated and that the decree be modified so that the care, custody and control of Lang be awarded to plaintiff; that defendant be required to reimburse his daughter for the money she was required to borrow to support herself so that same might be repaid; that defendant be required to reimburse plaintiff in the sum of $600, which she was compelled to spend for Lang's care and support; that he be required to restore to his daughter her personal property heretofore mentioned within a reasonable time or pay plaintiff the value thereof for and in Lang's behalf; that defendant be ordered to pay plaintiff not less than $400 a month for the care and support of Lang; and that she be awarded reasonable solicitor's fees, not less than $2,500.

As heretofore stated a copy of the foregoing petition accompanied by notice of a motion for leave to file same was served upon the Butler law firm, which represented defendant at the instance of the Cleveland law firm when the original decree of divorce was entered. Upon the filing of plaintiff's petition the court entered a rule upon defendant to plead to same within five days. January 29, 1934, the law firm of Butler, Pope, Ballard & Elting filed a written motion, supported by the affidavit of Frank E. Harkness, for an extension of time to February 20, 1934, within which to move to dismiss plaintiff's petition or answer same. Harkness stated in his affidavit that the law firm upon

which plaintiff's motion and copy of her petition were served was composed in part of some of the same members of the firm that appeared for defendant in this cause at the time of the entry of the original decree; that he was the member of the firm in direct charge of the case and conducted the proceedings in behalf of defendant, which led to the entry of the decree of divorce; that his firm was employed to represent defendant by Squire, Sanders & Dempsey, attorneys at law of Cleveland, Ohio, and received·its instructions for the conduct of the case exclusively from the Cleveland lawyers, who informed his firm that defendant was at that time in Europe; that neither he nor any other member of his firm, either as then or now constituted, had had any communication with defendant or any knowledge of his whereabouts since the entry of the original decree; that, immediately upon being served with the notice of plaintiff's motion, his firm forwarded the copy of her petition to modify the divorce decree to the Cleveland lawyers with a request for instructions in connection therewith; that the Cleveland lawyers telephoned his firm January 24, 1934, that they had not heard from defendant for several years and had no information as to his present residence, but that they were cabling the branch of the National City Bank at Nice, France, in an endeavor to locate him; and that he was advised by one of the Cleveland lawyers on January 27, 1934, that no answer had been received from said bank or defendant and that the Cleveland firm was making further efforts to locate defendant, but that thus far their efforts had been unsuccessful.

The chancellor allowed the motion of the Butler firm to extend the time to move to dismiss or answer plaintiff's petition to February 20, 1934.

February 20, 1934, the Butler law firm moved "to vacate, set aside and annul their appearance as solic-

itors for defendant in said cause'' entered January 29, 1934, and presented Frank E. Harkness' affidavit in support of their motion. This affidavit of Harkness, after reciting his membership in the Butler firm, its employment to represent defendant, his conduct of the divorce proceedings in behalf of his firm and the successive changes in the membership of the firm since the decree of divorce was entered, asserted that neither he nor any partner of his successive firms had had any communication directly or indirectly with defendant since October, 1929; that the original divorce action was uncontested, his firm being employed for the sole purpose of seeing that the proceedings therein were regular and that the decree was in proper form and contained provisions satisfactory to the defendant with reference to the custody of his minor child; that his firm was employed by the Cleveland law firm, which, although it had made diligent efforts to locate Cummer since the filing of plaintiff's petition to vacate, had been unsuccessful; and that neither the Cleveland firm nor the Butler firm nor any member of either firm had received from defendant any instructions or authority to act for or represent him in the matter of plaintiff's petition.

The motion of the Butler firm to vacate and annul its appearance was successively continued until March 26, 1934. In the meantime, on March 21, 1934, an injunction was issued by the chancellor, without notice and without bond, restraining the Bankers Trust Company of New York City, individually and as trustee, from paying out, transferring or in any other manner relinquishing the possession and control of any money, securities or other property in its custody belonging to defendant, and restraining defendant from attempting to withdraw, transfer or dispose of any such money, securities or other property.

March 26, 1934, the trial court found that "irrespective of the number of changes in the composition of the personnel of said law firm of Butler, Lamb, Foster & Pope, now known as Butler, Pope, Ballard & Elting, they are still the solicitors of record for the defendant," and ordered "that the motion of said firm, Butler, Pope, Ballard & Elting, asking this court to vacate, set aside and annul their appearance as solicitors for defendant, be and is hereby denied." In the same order defendant was ruled to answer within one day plaintiff's petition of January 24, 1934, to modify the original divorce decree.

March 28, 1934, the 12 members of the Butler law firm filed a petition sworn to by Harkness, in which they averred facts showing that they did not represent defendant; that they had been retained solely to represent him in the proceedings leading to the entry of the divorce decree in October, 1929; and that they had no authority to act for or represent defendant in the matter of plaintiff's petition to vacate or modify the decree of divorce. This petition also averred that "your petitioners received information that said defendant was residing at No. 5 Rue De la Pondrier, Algiers, Algeria, and your petitioners caused a cable message to be sent to the said defendant at that address, requesting instructions with reference to the petition of said complainant. Your petitioners are informed and believe, and upon such information and belief charge the fact to be, that said cable message was duly delivered to said defendant on or before March 19, 1934, and said defendant has not replied thereto." The court allowed the prayer of this petition and on March 28, 1934, granted leave to the Butler firm and its members to withdraw their appearance as solicitors for defendant, discharging them "of and from further responsibility."

Thereafter, on the same day, the court entered an order finding defendant in default and further finding (1) that he abandoned his daughter in Nice, France; (2) that he was not a fit and proper person to have his daughter's custody; (3) that he wrongfully took from his daughter two fur coats, three diamonds and one Ford automobile; and (4) that she had to borrow 35,000 francs to support herself after said abandonment, and that sums of $200, $300 and $500 were expended for Lang Cummer's care and support by plaintiff. Pursuant to these findings it was ordered (1) that the divorce decree of October 25, 1929, be modified and the custody of the daughter awarded to plaintiff; (2) that defendant pay plaintiff $1,000 as reimbursement for moneys alleged to have been expended by her for and on behalf of Lang; (3) that he pay plaintiff $2,310 for the use of Lang in order to repay the 35,000 French francs alleged to have been borrowed by her for her support; (4) that he return the furs, diamonds and automobile of an aggregate value of $4,700 alleged to have been taken by him from Lang; and (5) that he pay plaintiff $2,500 for her solicitor's fees. It was further ordered that if the property mentioned was not restored and the various amounts paid to plaintiff by defendant within three days, judgment would be entered against defendant in plaintiff's favor for $10,510, upon which execution was to issue; and that defendant pay plaintiff $400 a month, commencing March 1, 1934, for the support of Lang to and including the month of July, 1934, when she would have attained her majority.

April 2, 1934, the court entered a judgment against defendant in favor of plaintiff for $10,510, which included the alleged $1,000 advanced by plaintiff, the alleged $2,310 borrowed by Lang, $500 for fur coats, $3,450 for diamonds, $750 for the automobile and $2,500 for solicitor's fees.

Another judgment was entered against defendant April 18, 1934, for $800 for support money for Lang for the months of March and April, 1934.

April 20, 1934, without notice to defendant and without bond, an order was entered restraining him from selling, assigning or removing any securities, money, etc., and particularly certain specified securities, and also restraining The Fair, an Illinois corporation, from accepting for assignment and transfer any certificate of its stock registered in defendant's name.

July 3, 1934, the chancellor entered an additional judgment for plaintiff against defendant in the amount of $1,200, which represented $400 a month theretofore ordered for the support of Lang for May, June and July, 1934.

Pursuant to the judgments heretofore set forth, or some or one of them, plaintiff caused a levy to be made on 150 shares of stock of The Fair, owned by defendant, and she purchased this stock at the sheriff's sale. July 30, 1934, on plaintiff's motion, the court entered an order directing The Fair corporation to issue forthwith to her two stock certificates, each for 75 shares of its common stock, in lieu of the 150 shares of stock standing in defendant's name upon the books of said corporation, upon her individual indemnifying bond. On the basis of plaintiff's judgment of April 2, 1934, against defendant for $10,510, she commenced an attachment proceeding in New York City and recovered from the Bankers Trust Company, as garnishee, $512.36 belonging to defendant. Plaintiff also collected in New York City $1,257.75 belonging to defendant, which represented the quarterly dividend on certain stock owned by him.

October 9, 1934, defendant filed his verified petition to set aside the order modifying the decree and awarding the custody of the child to plaintiff and to vacate all judgments and orders for injunction and otherwise

entered subsequent to the entry of the original decree of divorce. This petition and the petition supplementary thereto filed October 25, 1934, alleged *inter alia* that defendant was 65 years of age and suffered from the heart ailment known as angina pectoris for nine years; that for two years prior to the entry of the decree of divorce he resided in Europe with his daughter Lang, who was in his care and custody; that continuously since that time he has lived in France or Algiers on account of his health; that he at all times provided for his daughter; that he lived permanently in Nice, France, until February, 1933, except for brief periods when he and his daughter resided in Vienna, Austria, in order to obtain the services of a certain specialist there; that in February, 1933, Lang decided that she wanted to take up nursing and he arranged for her entrance into the dispensary La Croix Rouge at Nice; that he provided her with a home at Le Pension Panonia (in the care of a matronly, motherly woman who had two daughters about Lang's age) and arranged a credit for her at a bank in Nice, where she could draw necessary funds; that it was necessary for him to make this arrangement because he was ordered by his physicians to go to Algiers where the climate would benefit him; that he heard from his daughter at regular intervals until he returned to his apartment in Nice in April, 1933; that upon his return he learned that Lang had departed from Nice with one Gilbert Murray, a married man of family, and had gone to St. Moritz, Switzerland, and Paris, France, abandoning her nursing studies and the home and care he had provided for her; that he applied to the American consul for aid in enforcing his parental authority over his daughter and was advised that under the French law the consul could not intervene; that he then requested the assistance of the chef de police, who informed him that under the law of France a girl beyond the age of

fifteen years and three months could not be compelled to submit to the authority of her parent; that he endeavored to persuade Lang to leave Murray and return to him, but she refused to comply with his request; that he then returned to Algiers and shortly thereafter Lang communicated with him, advising that she had separated from Murray and requesting that he send her money so that she might join him; that he cabled funds to her and she arrived at his hotel in Algiers; that she told him that she desired to further pursue her nursing studies and he arranged for her entrance into a hospital in Algiers, established and paid in advance for living quarters for her at a hotel and provided her with a credit of 500 francs a month for pocket money at Barclay's Bank, Algeria; and that shortly thereafter he was required to return to Nice for further medical attention, leaving his daughter in Algiers.

It was further averred that Lang called for and received her allowance at the Algiers bank until June 1, 1933; that thereafter the bank notified him that his daughter had not called for her semimonthly allowance payable June 15, 1933, and he immediately endeavored to locate her; that he did not hear from her and was unable to discover anything of her whereabouts until he obtained information that his bank account in New York City and certain stock dividends had been attached as a result of these proceedings, and then learned, for the first time, that his daughter was in the United States; that he later learned that the aforementioned Murray induced Lang to go to France with him from Algiers and there obtained a fraudulent passport for her in the name of Mlle. Desmond, with which she entered England with him in the fall of 1933; that this fraud was discovered by the English authorities and Lang was deported to the United States; that she made no effort during this time to communicate with him, though she well knew that he was living at his apart-

ment in Nice, France; and that she also knew that there were funds for her at Barclay's Bank at Algiers, which she made no effort to obtain.

It was also alleged that Cummer had no knowledge or notice of these proceedings and did not authorize anyone to accept notice for him or to represent him in this cause; that the notice served on the Butler firm was of no effect; that the members of such firm were not his attorneys at the time of such service and had no authority to accept same or represent him in this matter; that all orders and judgments entered subsequent to plaintiff's motion and petition of January 24, 1934, were entered without notice or knowledge to him; that he is a fit and proper person to have the care and custody of his daughter; and that he always provided for her according to his means.

In his petitions defendant denied that he had ever had any improper relations with his cook or any other female; that he wrongfully dispossessed his daughter of any of her clothing, jewelry, furs, automobile or other property; that he refused to obtain a necessary passport for her; that he had ever expended sums of from $350 to $500 a month for her support; that he refused to support her since May, 1933; that he gave any property which he had taken from Lang to the so-called cook; that he is a man of large financial means or that he is worth in excess of $1,000,000 or any other sum even approximating that amount; or that he has an income in excess of $10,000 a month.

He further alleged that, subsequent to the entry of his daughter into the Red Cross dispensary in Nice, France, he at all times, under his physician's instructions, required the services of a nurse, who accompanied him on his trips to Vienna and to Algiers; that he never had any use for his daughter's fur coats, jewelry or other property claimed to have been taken by him from her and that his daughter had possession

of all such property owned by her when he last saw her; that she still has such property unless she has lost or otherwise disposed of same; that his daughter never did own a $3,000 diamond ring or an automobile, but that he did and occasionally permitted her to use same; and that his total income since January, 1933, has not exceeded $400 a month, subject to a large reduction because of the international money exchange rate on the American dollar.

Both of his petitions conclude with the prayer that the court vacate all the judgments and orders entered subsequent to the entry of the divorce decree.

It requires neither argument nor citation of authority to sustain the proposition that in a divorce proceeding where the parties have a minor child the court retains jurisdiction of the cause as to the care, custody and control of such child until it attains its majority, so that the rights of the minor child may be protected. It is fundamental, however, that before that jurisdiction can be brought into play and the court empowered to enter a valid order affecting the rights of the father, who has by final decree been awarded the care and custody of the child, reasonable notice must be given him so that he may be afforded an opportunity for his day in court to protect his rights. It is obvious from an examination of the record before us that defendant had no notice or knowledge, either actual or constructive, or through any attorney or attorneys authorized to represent him, of the filing of plaintiff's petition and motion to vacate the decree or of the judgments or orders entered subsequent thereto.

While plaintiff's counsel seems to feebly urge that even without notice to defendant the trial court had such continuing jurisdiction over the person of defendant, as well as over the subject matter, as to render all the orders and judgments in question valid, in the final analysis he appears to recognize the necessity

of reasonable notice to defendant of some kind or nature so that he may be shown to have had at least some knowledge of the proceedings directed against him and his property. The argument of plaintiff's counsel that a court of chancery retains such jurisdiction of the person of a party to a final divorce decree, where the interests of a minor child are involved, that it may without notice more than four years after the entry of such final decree enter judgments and orders vitally affecting the rights of such party, may, we think, be safely disregarded as being without merit.

What reasonable notice does plaintiff say that she gave defendant of her petition and motion to modify the decree as to the custody of the child and for the other relief sought?

Plaintiff relies (1) on the service of a copy of such petition and motion on the Butler law firm which represented defendant in the proceeding that eventuated in the final decree of divorce entered October 25, 1929, and (2) on a cablegram which the Butler firm alleged that it had caused to be sent to defendant's address in Algiers, requesting instructions with reference to plaintiff's petition, which cablegram, it was averred, the Butler law firm was "informed and believed" defendant received but did not reply to.

The Butler law firm never formally filed defendant's appearance in response to plaintiff's petition and motion to modify the decree. By its petitions and affidavits it repeatedly insisted that no member of the firm had ever seen defendant and that it had merely been retained by his Cleveland attorneys to see that the proceedings were regular and his rights protected under the terms of the decree of divorce; that it had heard nothing from him since the entry of the decree; and that it did not represent him and had no authority to represent him in the matter of plaintiff's petition and motion.

In *Swift v. Allen,* 55 Ill. 303, a decree dismissing a bill in chancery was entered. At a subsequent term the decree was amended. The only notice given to defendants of the intention to move for an amendment of the decree was a verbal notice to their solicitor and a written notice directed to defendants posted on the court house door seven days before the motion was made. The court in holding the amendment to the decree void said, at p. 306:

''The notice to the solicitor was of no avail, because his connection with the suit had terminated with the final decree, even if a merely verbal notice could be held sufficient in any case—a position to which we by no means assent. . . .

''The amendment having, then, been made without notice to the defendant in this suit, it is, as to him, a nullity. The court acted without jurisdiction. It could no more impair his rights by an order made in the guise of an amendment, without first bringing him before the court, than it could do so by pronouncing a new decree. The order making the amendment was not merely erroneous, as suggested by counsel. It was absolutely void, for want of jurisdiction, and can be assailed in a collateral as well as in a direct proceeding.''

In a practically similar situation in *Scott v. Scott,* 174 Iowa 740, the court said, at pp. 744, 745:

''The modification of the decree, by striking therefrom the provision relating to the custody of the child, was without authority. This order was entered at the term following that at which the decree was entered and therefore could not properly have been made on the court's own motion or without notice to the plaintiff. (Citing cases.) That the plaintiff knew nothing of the filing of this motion to strike, and received no notice thereof, is not disputed, nor had she employed counsel to represent her, save in procuring the decree of divorce, being attorneys other than those now repre-

senting her. Their engagement ended with the entry of the decree. The employment of attorneys to prosecute suit always terminates with judgment or decree, unless something consequent thereof is to be done to render the judgment or decree or fruits thereof effective or available. 3 Am. & Eng. Ency. of Law (2d Ed.) 329; 4 Cyc. 952. As plaintiff was then in possession of the child, there was nothing more to be done, and her then attorneys were without authority to appear in response to the motion to strike, or to enter into any stipulation with reference thereto. It follows that the court was without jurisdiction in striking from the decree the order giving the custody of the child to the plaintiff.''

The service of notice of the motion to vacate, accompanied by a copy of the petition and affidavit in support thereof, more than four years after the entry of the decree of divorce, on the Butler firm, which represented defendant in the divorce proceeding, was not itself such notice to defendant as authorized the trial court to divest him of his rights. (*McNab v. Dunsmure,* 274 Ill. App. 560; *Jacobsen v. Ashkinaze,* 337 Ill. 141; *Strook v. Jamieson,* 139 Ill. App. 339; *Smith v. Wilson,* 26 Ill. 186, 187; Weeks, Attorneys at Law, 426; 6 C. J. 640, par. 144.)

On the ground of natural justice and as a matter of fair play defendant was entitled to some notice, such as it may have been practicable to have given him, and, inasmuch as he was subject to the court's jurisdiction, personal notice to him, even in Europe, would have been sufficient. (*White v. White,* 65 N. J. Eq. 741.) But it has not been shown that he received notice of any kind, either here, in Europe or in Africa.

The relationship of attorney and client between the Butler firm and defendant having ceased to exist after the decree of divorce was entered October 25, 1929, service of plaintiff's notice of motion and petition on that firm was without legal effect. The Butler firm's

motion of January 28, 1934, for an extension of time to February 20, 1934, to move to dismiss or answer plaintiff's petition and its subsequent motions and petitions to annul and vacate its appearance were all filed without the authority of defendant and could in nowise bind him. The Butler firm never even pretended to represent defendant or to have authority to represent him in the matter of plaintiff's petition to modify the decree. Its first motion was merely for time to see if it could communicate with or contact defendant to find out if he wanted that firm to represent him, and when it was unable to make any contact with him its subsequent motions and petitions were all for the purpose of securing the annulment of its purported appearance and its discharge from all responsibility as his solicitors. The notice to the Butler firm not constituting legal notice to defendant, and no notice of any kind having been given him personally of the proposed modification of the decree, the court was without jurisdiction to enter the orders and judgments in pursuance of and subsequent to plaintiff's motion and petition of January 24, 1934, and all such orders and judgments are therefore void.

A unique situation appears in the record as to the Butler firm's various petitions to annul and vacate its appearance for defendant. March 26, 1934, the court entered an order finding that "they are still solicitors of record for the defendant," and denying its motion "to vacate, set aside and vacate their appearance." Two days later, March 28, 1934, in response to the petition of all the members of the Butler firm that "they have no authority to act for or represent said defendant in the above entitled cause or any matter connected therewith," the court entered an order granting leave to the members of the Butler firm "to withdraw their appearance as solicitors of record for defendant" and their withdrawal having been entered of

record, ''they are hereby discharged of and from further responsibility as solicitors of record for defendant.'' We thus have the anomalous situation presented, and relied upon by plaintiff, of the court acquiring jurisdiction over defendant by the appearânce and conduct of attorneys whom the court itself found had no right or authority to represent him. Plaintiff's position in this regard is, of course, untenable. These attorneys were permitted to withdraw and discharged of all responsibility and defendant, as the record discloses, was thereafter without the benefit of counsel and left to the tender mercies of plaintiff and her solicitor.

Plaintiff now insists that the respective terms having passed at which the various judgments and orders sought to be vacated were entered, the trial court was powerless to set them aside. A judgment may be set aside at a term subsequent to that at which it was rendered where the court has failed to acquire jurisdiction of the person of the defendant. (*Owens v. Ranstead,* 22 Ill. 161, 166; *Grand Tower Mining, Mfg. & Transp. Co. v. Schirmer,* 64 Ill. 106.) Where it is clear, as here, that defendant was not served with notice, had no knowledge of the proceedings against him, and, therefore, had no opportunity to defend against them, the judgments and orders are void and should be set aside. (*Kochman v. O'Neill,* 202 Ill. 110; *City of Chicago v. Nodeck,* 202 Ill. 257.) Defendant states in his verified petitions that he had no knowledge of these proceedings until after the various judgments had been rendered against him. However great the lapse of time, laches is not imputable to a party who had no knowledge of a judgment against him and it is only required of him to be diligent in seeking relief after he has notice of it. Laches is not mere lapse of time, but is unreasonable delay under the circumstances, generally involving injustice or injury to the opposite party.

(34 C. J. 265, sec. 488.) There is no merit to plaintiff's contention that defendant was guilty of laches in this cause.

Plaintiff concedes that she made no attempt to personally notify defendant of the filing of her motion and petition to modify the decree, and her claim that the alleged cablegram of the Butler firm addressed to defendant's purported residence at Algiers constituted personal notice to defendant is without merit. The allegation of the members of the Butler firm, in their petition for permission to withdraw as defendant's solicitors, that their cable was delivered to defendant was purely on information and belief and is divested of force by defendant's positive statement (in his verified petition to vacate all the orders and judgments entered at plaintiff's instance) that he had no notice or knowledge of the filing of plaintiff's motion and petition to modify the decree or of the entry of the subsequent orders and judgments. The truth of this, as well as of all other well pleaded allegations of defendant's petition and supplementary petition to vacate the orders and judgments heretofore referred to, was admitted by plaintiff's motion to strike same.

We have carefully examined all the authorities cited by plaintiff, where a final decree of divorce has been entered, as to the sufficiency of a notice to counsel of record in the divorce action to bind the party he represented therein in a proceeding brought at a subsequent term to amend or modify the decree at the instance of the other party, and find that in every case cited the party personally appeared or that reasonable notice was in some manner given him. Wisconsin and possibly one or two other jurisdictions have statutory provisions that, even after final decree, notice to attorneys of record of either party to a divorce decree shall constitute notice to such party of proceedings thereafter brought to amend, modify or enforce the decree;

but in the absence of such statutory regulation the rule is unquestionably otherwise.

In view of what has already been stated, we deem it unnecessary to discuss such other points as have been urged, except to state that we think that the procuring by plaintiff and her counsel of the veritable flood of judgments, injunctions and other orders in the absence of defendant, who had received no notice and was without counsel to protect his rights, constituted a flagrant abuse of equity and an utter disregard of defendant's rights.

After defendant's appeal bond of $1,000 had been approved by the trial court December 19, 1934, he deposited with the clerk of the superior court as additional security for the payment of the judgments entered in this cause "in the event such judgments or this cause is sustained on appeal," a certificate for 100 shares of stock of the American Telephone & Telegraph Co. Upon such deposit an order was entered that plaintiff "shall forthwith dismiss all pending actions and suits pending in the state of New York based on the judgments entered in this cause," and that "all injunctional orders and injunctions heretofore entered herein on March 21, 1934, April 20, 1934, and April 25, 1934, be and the same are hereby vacated, dissolved and set aside."

For the reasons stated herein the order of the superior court of November 30, 1934, striking from the files defendant's petitions for the vacation of all judgments, orders for injunctions and otherwise, commencing with the order of January 24, 1934, granting leave to plaintiff to file her petition of that date to modify the decree and ruling defendant to plead to same, is reversed and this cause remanded to the superior court with directions to grant the prayer of defendant's petitions of October 9, 1934, and October 25, 1934, to vacate all the judgments and orders entered against him since the

entry of the decree of divorce October 25, 1929, including the order of March 28, 1934, containing certain findings of fact, the judgment of April 2, 1934, for $10,510, the judgment of April 18, 1934, for $800, the order of June 26, 1934, directing a certain depositary of defendant to turn over his money or property to plaintiff, the judgment of July 3, 1934, for $1,200 and the order of July 30, 1934, directing The Fair, an Illinois corporation, to issue forthwith to plaintiff certificates for stock of such corporation owned by defendant. It is further directed that defendant be permitted to institute such proceedings in the superior court in this cause as may be appropriate and necessary to compel plaintiff to return to him the amounts of $512.36 and $1,257.75, respectively, collected by her through attachment or other proceedings in the State of New York predicated upon the void judgments entered in this cause, and to compel her to return to The Fair the certificates of stock owned by defendant, which such corporation has heretofore been directed by the court to deliver to plaintiff, so that such stock may again be credited on the books of the corporation as belonging to defendant.

*Reversed and remanded with directions.*

SCANLAN, P. J., and FRIEND, J., concur.