[L. A. No. 24322. In Bank. Nov. 19, 1957.]

GERTRUDE LEWIS, Appellant, v. ULYSSES LEWIS, Respondent.

Brock, Easton, Fleishman & Rykoff and Robert L. Brock for Appellant.

Sidney A. Cherniss and Louis Miller for Respondent.

TRAYNOR, J.—The parties were husband and wife and were domiciled in Illinois. In 1944, the husband, defendant herein, brought an action for divorce in an Illinois court. The wife, plaintiff herein, answered and cross-complained for separate maintenance. Defendant answered the cross-complaint. Thereafter, he established his domicile in Nevada and, on August 27, 1947, brought an action for divorce in a court of that state, disclosing the pendency of the Illinois action and giving notice to plaintiff by serving her personally in the state of Illinois. (*Cf. Walker* v. *City of Hutchinson,* 352 U.S. 112 [77 S.Ct. 200, 202-203, 1 L.Ed.2d 178].) She did not appear. The Illinois court sought unsuccessfully to enjoin defendant from prosecuting the Nevada action. On September 30, 1947, the Nevada court entered its judgment granting defendant a default divorce and ordering that the parties were ". . . released from the obligations of the marriage and restored to the status of single persons."* Soon thereafter the divorce action in Illinois came to trial. Defendant did not pursue his complaint or defend against the plaintiff's cross-complaint. On December 30, 1947, the Illinois court entered judgment for plaintiff on her cross-complaint, making permanent its prior temporary order that defendant pay plaintiff $18 a week for her support. By a "judgment order" entered in the Illinois action on December 12, 1950, the Illinois court found defendant in default on the weekly payments in the sum of $3,078. Defendant remarried shortly after entry of the Nevada decree and is now a resident of California. According to his own testimony he has made no payments to plaintiff since October or November of 1947. Plaintiff resides in Illinois and has not remarried.

---

*The decree would terminate plaintiff's right to support if she were a Nevada domiciliary. (*Summers* v. *Summers,* 69 Nev. 83, 85-86, 92-93 [241 P.2d 1097]; *Herrick* v. *Herrick,* 55 Nev. 59, 68 [25 P.2d 378]; *Sweeney* v. *Sweeney,* 42 Nev. 431, 438-439 [179 P. 638].)

Plaintiff brought this action to establish the Illinois judgment of December 30, 1947 and the subsequent "judgment order" of December 12, 1950, as judgments in this state and to recover the amounts unpaid thereunder. Defendant cross-complained to establish the validity of the Nevada decree. The trial court entered judgment for defendant, concluding that the Nevada decree terminated his obligation to support plaintiff and that the Illinois judgments are ". . . invalid and unenforceable as against defendant . . . and are not entitled to recognition in this court or in this State." Plaintiff appeals.

Plaintiff contends that the Illinois court had jurisdiction to adjudicate her right to support and that the Illinois judgment of December 30, 1947, and the Illinois "judgment order" of December 12, 1950 are entitled to recognition in this state under the full faith and credit clause of the United States Constitution. (U.S. Const., art. IV, § 1; 28 U.S.C. § 1738.) Defendant contends that the Nevada decree terminated the marriage and plaintiff's right to support and left the Illinois court without a "res" upon which to act and that the Illinois judgment and "judgment order" were therefore entered without jurisdiction and are not entitled to recognition in this state. He also contends that even if the 1947 judgment is a valid adjudication of his obligation to support plaintiff, the 1950 "judgment order" is void because he was not given notice of the proceedings resulting in that order, and that recovery under the 1947 judgment for payments that became due more than five years before August 26, 1954, the date of the commencement of this action, is barred by the five-year limitation on actions on judgments found prior to 1953 in subdivision 1 of section 336 of the California Code of Civil Procedure.* Plaintiff agrees that if the 1950 "judgment order" is void, recovery of the payments due prior to August 26, 1949, is barred as defendant contends.

Defendant acknowledges the settled rule that when a wife has secured a judgment of separate maintenance in the state of her domicile, her right to support thereunder will survive a subsequent valid, ex parte, foreign decree of divorce secured by her husband if the law of her domicile so provides. (*Estin* v. *Estin*, 334 U.S. 541 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412]; *Worthley* v. *Worthley*, 44 Cal.2d 465 [283

---

*Defendant did not plead section 361 of the California Code of Civil Procedure nor the Illinois statute of limitations applicable thereunder. (See *Biewend* v. *Biewend*, 17 Cal.2d 108, 114-117 [109 P.2d 701, 132 A.L.R. 1264]; *Bliss* v. *Sneath*, 119 Cal. 526, 527-529 [51 P. 848].)

P.2d 19]; *Pope* v. *Pope,* 2 Ill.2d 152 [117 N.E.2d 65].) He contends, however, relying on *Chirgwin* v. *Chirgwin,* 26 Cal. App.2d 506 [79 P.2d 772], that a wife may not enforce a support order obtained by her in the state of her domicile *after* the rendition of a valid, ex parte, foreign divorce decree in favor of her husband. (See also *De Young* v. *De Young,* 27 Cal.2d 521 [165 P.2d 457]; *Cardinale* v. *Cardinale,* 8 Cal. 2d 762 [68 P.2d 351]; *Proper* v. *Proper,* 102 Cal.App.2d 612 [228 P.2d 62]; *Coleman* v. *Coleman,* 92 Cal.App.2d 312 [206 P.2d 1093]; *Patterson* v. *Patterson,* 82 Cal.App.2d 838 [187 P.2d 113]; *Calhoun* v. *Calhoun,* 70 Cal.App.2d 233 [160 P.2d 923].) ■ The first answer to this contention is that it should have been invoked in the Illinois proceeding and that even if the Nevada decree had been pleaded as a defense in that proceeding and the Illinois court had erroneously failed to recognize it, defendant's remedy was by appeal and he cannot now attack the Illinois judgment. (*Treinies* v. *Sunshine Min. Co.,* 308 U.S. 66, 78 [60 S.Ct. 44, 84 L.Ed. 85]; *Morris* v. *Jones,* 329 U.S. 545, 551-552 [67 S.Ct. 451, 91 L.Ed. 488, 168 A.L.R. 656]; see Rest., Judgments § 13.) ■ The second answer is that even if defendant could now attack the Illinois judgment, the recent decision of the United States Supreme Court in *Vanderbilt* v. *Vanderbilt,* 354 U.S. 416 [77 S.Ct. 1360, 1 L.Ed.2d 1456], demonstrates that his contention is without merit. The husband in the Vanderbilt case secured an ex parte Nevada divorce. Subsequently, the wife brought an action against the husband for support in a New York court. In affirming an award to the wife, the court stated: "In *Estin* v. *Estin* . . . this Court decided that a Nevada divorce court, which had no personal jurisdiction over the wife, had no power to terminate a husband's obligation to provide her support as required in a pre-existing New York separation decree. The factor which distinguishes the present case from Estin is that here the wife's right to support had not been reduced to judgment prior to the husband's *ex parte* divorce. In our opinion this difference is not material on the question before us. Since the wife was not subject to its jurisdiction, the Nevada divorce court had no power to extinguish any right which she had under the law of New York to financial support from her husband. It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. Here, the Nevada divorce court was as powerless to cut off the wife's support right as it would have

been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court's jurisdiction.'' (354 U.S. at 418-419 [77 S.Ct. at 1362-1363].) The court held ''Therefore, the Nevada decree, to the extent it purported to affect the wife's right to support, was void and the Full Faith and Credit Clause did not obligate New York to give it recognition.'' (354 U.S. at 419 [77 S.Ct. at 1363]; see also concurring opinion in *Armstrong* v. *Armstrong,* 350 U.S. 568, 575 [76 S.Ct. 629, 100 L.Ed. 705].)

In this case, therefore, the Illinois court was not obliged to recognize that part of the Nevada judgment purporting to terminate plaintiff's right to support under Illinois law, nor are we. *Chirgwin* v. *Chirgwin, supra,* 26 Cal.App.2d 506, is inconsistent with the Vanderbilt case and is therefore disapproved. The other California cases referred to above in connection with defendant's contention that his obligation to support plaintiff was terminated by the Nevada decree are not in point. ■ The effect on a wife's right to support of a foreign, ex parte divorce secured by her husband is determined by reference to the law of the state of the wife's domicile at the time of the divorce, in this case the law of Illinois. (See *Estin* v. *Estin, supra,* 334 U.S. at 544, 547; *Sutton* v. *Leib,* 342 U.S. 402, 406 [72 S.Ct. 398, 96 L.Ed. 448]; *Esenwein* v. *Commonwealth,* 325 U.S. 279, 280-281 [65 S.Ct. 1118, 89 L.Ed. 1608, 157 A.L.R. 1396]; *Worthley* v. *Worthley, supra,* 44 Cal.2d at 468; *Biewend* v. *Biewend,* 17 Cal.2d 108, 111, 114 [109 P.2d 701, 132 A.L.R. 1264]; *Vanderbilt* v. *Vanderbilt,* 1 N.Y.2d 342 [135 N.E.2d 553, 557-558]; Morris, *Divisible Divorce,* 64 Harv.L.Rev. 1287, 1302.

Illinois was the state of domicile of both defendant and plaintiff when the Illinois action was brought and was the state of plaintiff's domicile when the judgment was entered. ■ Defendant contends that the judgment was unauthorized by Illinois law, citing *Knowlton* v. *Knowlton,* 155 Ill. 158, 165 [39 N.E. 595] and two Illinois statutes. (Ill.Rev.Stat. 1953, ch. 40, par. 19 [Jones Ann.Stat. 109.186]; Ill.Rev.Stat. 1953, ch. 68, par. 22 [Jones Ann.Stat. 109.189].) This contention should have been raised in the Illinois proceeding and is res judicata. Moreover, the Illinois law is now settled contrary to defendant's contention. Speaking of the Knowlton case, the Supreme Court of Illinois said in *Pope* v. *Pope,* 2 Ill. 2d 152, 156 [117 N.E.2d 65]: ''It appears . . . that the decision was not based on Illinois law but on a supposed require-

ment of the full faith and credit clause which may no longer exist. See *Thompson* v. *Thompson,* 226 U.S. 551 [33 S.Ct. 129, 57 L.Ed. 347]; *Estin* v. *Estin,* 334 U.S. 541, 546 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412], note 4.'' It is now definitely established that the supposed full faith and credit requirement on which Knowlton was based does not exist. (*Vanderbilt* v. *Vanderbilt, supra,* 354 U.S. 416 [77 S.Ct. 1360].) Any doubt that under the law of Illinois the right to support survives a foreign ex parte divorce was laid at rest by the Supreme Court of Illinois in the Pope case: ''A decree of divorce enables the parties to contract a new marriage; that it does not necessarily relieve them of all the obligations of the old is witnessed by the award of alimony upon, or even after divorce.'' (2 Ill.2d at 157.) ''Occasional suggestions in our opinions that divorce terminates the right to support or kindred property rights [citations] must be considered as referring only to those situations where the wife has participated in the proceedings, or where a contract between the parties was construed to require this result.'' (2 Ill.2d at 158.)

The question next to be considered is whether the Illinois judgment of December 30, 1947, is entitled to recognition in California. Payments past due under an Illinois separate maintenance decree are not subject to modification in Illinois. (*Stewart* v. *Stewart,* 1 Ill.App.2d 283, 286 [117 N.E.2d 579] and cases there cited.) As to all accrued instalments not subject to modification by the court rendering the original order, an order for the payment of money as alimony rendered by a court of competent jurisdiction in one state must be recognized by all other states under the full faith and credit clause of the United States Constitution. (*Biewend* v. *Biewend, supra,* 17 Cal.2d at 110-111 and cases cited.) Such an order is also recognized in California as to future payments. (*Biewend* v. *Biewend, supra,* 17 Cal.2d at 113; *Worthley* v. *Worthley, supra,* 44 Cal.2d at 474.)

The final question concerns the effect to be given the supplemental judgment order of the Illinois court of December 12, 1950. Having acquired jurisdiction of the subject matter and of the parties in the divorce action brought by defendant, the Illinois court retained jurisdiction to modify and enforce its support order. (*Karr* v. *Rust,* 217 Ill.App. 555, 561; *Adam* v. *Saenger,* 303 U.S. 59, 67-68 [58 S.Ct. 454, 82 L.Ed. 649]; *Michigan Trust Co.* v. *Ferry,* 228 U.S. 346, 353 [33 S.Ct. 550, 57 L.Ed. 867]; Rest., Conflict of Laws, §§ 76, 105.) It

therefore had jurisdiction to enter the supplemental "judgment order" of December 12, 1950, fixing the amount of accrued arrearages. Nevertheless, defendant was entitled to notice of the proceedings culminating in that order, and if no notice was given him, the order is unenforceable. (*Griffin* v. *Griffin,* 327 U.S. 220, 228 [66 S.Ct. 556, 90 L.Ed. 635]; *Kaufman* v. *Kaufman,* 279 Ill.App. 1, 4; *Cummer* v. *Cummer,* 283 Ill.App. 220, 235; *Worthley* v. *Worthley, supra,* 44 Cal.2d 465, 469, 471.) Defendant testified and the trial court found that with respect to the 1950 proceedings defendant was not served with summons or other process and did not appear personally or by counsel. There was no evidence and no finding as to whether service was made upon the attorney who represented defendant in the original action. (See *Reynolds* v. *Reynolds,* 21 Cal.2d 580, 583 [134 P.2d 251].) Under Illinois law, however, such service would apparently not suffice as notice to defendant. (*Cummer* v. *Cummer, supra,* 283 Ill.App. at 235-237.) Nevertheless, it is obvious that the finding made by the trial court is not a finding that defendant had no notice. The finding is simply that he was not served and that he did not appear. In view of the court's continuing jurisdiction over defendant in matters relating to modification and enforcement of the support order, the question is not whether he was served or appeared but whether he had notice. Service in a technical sense is not required. Actual notice is sufficient. (See *Griffin* v. *Griffin, supra,* 327 U.S. at 228; *Cummer* v. *Cummer, supra,* 283 Ill.App. at 237; see *Mullane* v. *Central Hanover Trust Co.,* 339 U.S. 306, 314 et seq. [70 S.Ct. 652, 94 L.Ed. 865]; *Walker* v. *City of Hutchinson, supra,* 77 S.Ct. at 202.) There is no evidence from which we can determine whether or not defendant had notice. This fact can be ascertained on retrial.

If defendant had no notice of the 1950 proceedings, the "judgment order" of December 12, 1950, is unenforceable, and plaintiff's rights must be determined under the judgment of December 12, 1947. Recovery for payments due thereunder prior to August 26, 1949, is barred by the five-year statute of limitations found prior to 1953 in subdivision 1 of section 336 of the Code of Civil Procedure. (See *Chambers* v. *Gallagher,* 177 Cal. 704, 708-709 [171 P. 931].) If defendant had notice of the 1950 proceedings, the "judgment order" of December 12, 1950, is a valid judgment entitled to recognition under the full faith and credit clause of the United States Constitution, and the applicable statute of

limitations is the 10-year statute found in section 337.5 of the Code of Civil Procedure as amended in 1953. (See *Mudd* v. *McColgan*, 30 Cal.2d 463, 468 [183 P.2d 10].)

The judgment is affirmed insofar as it determines that the Nevada decree terminated the marital status of the parties and is reversed in all other respects for further proceedings in accordance with the views expressed herein.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., Spence, J., and McComb J., concurred.

Respondent's petition for a rehearing was denied December 17, 1957, and the judgment was modified to read as printed above.