164 Cal.App.2d 230 (1958)
EDWIN S. DOUGLAS, Plaintiff and Appellant,
v.
FAY H. DOUGLAS, Defendant and Appellant.
Civ. No. 22673. 
California Court of Appeals. Second Dist., Div. One. 
Oct. 16, 1958.
 Blase A. Bonpane, Bonpane & Dillon and Manuel Ruiz, Jr., for Plaintiff and Appellant.
 Jerrell Babb for Defendant and Appellant.
 WHITE, P. J.
 After the five-year period authorizing the issuance of execution under section 681 of the Code of Civil Procedure had expired, respondent, on March 29, 1956, filed in the superior court, a notice of motion, petitioning said court to nevertheless, issue execution pursuant to the provisions of section 685 of the Code of Civil Procedure. The record reveals that said motion was predicated upon the following factual background. Appellant and respondent were married in 1941 and separated in 1944. On April 28th of that year, appellant filed an action for divorce against respondent on the ground of extreme cruelty. On June 1, 1944, respondent filed an answer and cross-complaint for separate maintenance against appellant. On October 30, 1944, the superior court made its order pursuant to the prayer of said cross-complaint, directing appellant to pay respondent support money pendente lite, in the sum of $250 per month commencing November 15, 1944. Said payments were made by appellant to and including the month of February, 1946.
 There was testimony by appellant that from February, 1946 to July, 1949 he was absent from the State of California and spent "most of the time in New Rochelle, New York." Appellant, however, contends that during this period he made frequent trips to Los Angeles to appear in court in connection with pending litigation between him and respondent, the trial of which was continuously postponed due to "dilatory tactics" of respondent. In her affidavit respondent asserts that during these trips to Los Angeles, appellant "kept his whereabouts concealed" from her and that she could not, "with the exercise of due diligence, ascertain same until approximately the month of January, 1953, or for a total of seven years"; that she diligently sought at all times to ascertain appellant's whereabouts; and that she procured the issuance of writs of execution, all of which were returned unsatisfied. It further appears that in 1951, on the occasion of one of appellant's *233 visits to Los Angeles, respondent, through the office of the district attorney, instituted criminal proceedings against him for failure to provide for a minor child, allegedly the son of appellant. In his affidavits, appellant averred that in the early part of January, 1953, he returned to reside permanently in the city of Los Angeles since which time he has continuously lived in Los Angeles; that since the month of January, 1953, "appellant has been continuously in the employ of Telegraph Delivery Service; and the office of said Telegraph Delivery Service was conveniently located in a downtown building at 354 South Spring Street, Los Angeles, California."
 "In the fall of 1955 said Telegraph Delivery Service moved its office to Beverly Hills, California, and is located at 292 LaCienega Boulevard, Beverly Hills, California. Respondent has been always aware of the location and exact address of appellant's employment, and on numerous occasions, during the years 1954, 1955 and 1956, she caused appellant to be served with lawsuits, papers and orders to show cause. By reason of said lawsuits and numerous proceedings thereunder it became necessary for appellant to come into court any number of times throughout the year 1954 to attend court hearings of considerable length, conducted on various dates in the superior court before Judge Richards, Judge Walker, Judge McCoy and other judges of the superior court, which culminated in the dismissal in September, 1954, of 14 superior court lawsuits filed by respondent, from time to time, in the last 10 or 12 years. Said lawsuits and proceedings were entirely unrelated to any attempt, under section 681 or 685, Code of Civil Procedure, to collect back payments allegedly due her."
 "At no time whatsoever, within an entire period of ten years, between February, 1946, and March 29, 1956, the date of the filing of notice of motion for writ of execution under Section 685, Code of Civil Procedure, did respondent take any action to secure a writ of execution on back payments, under Section 681, Code of Civil Procedure, although respondent knew, from February, 1946, at all times, the whereabouts of appellant, and saw him on his several trips back to Los Angeles, and knew that he was locally employed since January, 1953, and yet waited until March, 1956, to file her motion for writ of execution."
 Appellant further asserts that on March 14, 1945, he obtained a valid judgment of divorce from respondent in Mexico. *234 That on March 28, 1945, he married his present wife. That thereafter, in 1951, respondent filed an action in the Superior Court of Los Angeles County, attacking the validity of said Mexican divorce, but, in September, 1954, she dismissed the action with prejudice. Appellant therefore, contends that the right of respondent to any further allowance of support pendente lite in the aforesaid separate maintenance action was terminated on March 14, 1945, by the Mexican divorce.
 It might here be noted that on July 5, 1949, the Superior Court of Los Angeles County, on its own motion, dismissed appellant's divorce action pursuant to the provisions of section 583 of the Code of Civil Procedure, and on July 7, 1949, the same court dismissed respondent's cross- complaint, upon which the order for support money pendente lite, here under consideration, was based.
 On June 10, 1949, appellant filed an action and obtained a judgment of divorce from respondent in the Eighth District Court of the County of Clark, State of Nevada. Subsequently, respondent made a special appearance in said Nevada court wherein she challenged the validity of the judgment of divorce on the ground of fraud and lack of jurisdiction. The motion was denied, no appeal was taken therefrom, and the judgment has become final.
 On March 29, 1956, respondent filed, in the Superior Court of Los Angeles County, her motion asking the court to issue a writ of execution pursuant to the terms of section 685 of the Code of Civil Procedure after the expiration of the five-year period provided by section 681 of the same code. Respondent's motion sought an execution and a judgment for accrued support payments allegedly due her from February, 1946 to July, 1949 under the pendente lite order granted on October 30, 1944, in her aforesaid separate maintenance action.
 Appellant filed objections to respondent's motion, supported by affidavits, on two grounds:
 (1) That appellant's judgment of divorce, obtained in Mexico on March 14, 1945, terminated respondent's right to further pendente lite support payments in her separate maintenance action;
 (2) That in any event, respondent had no standing in court because she had failed to exercise the due and necessary diligence required by law, and by the provisions of section 685, Code of Civil Procedure, on a request for the issuance *235 of execution after the expiration of the five-year period provided by section 681, Code of Civil Procedure.
 The court granted respondent's motion and ordered the issuance of a writ of execution under section 685 of the Code of Civil Procedure against appellant for the sum of $15,928.54 representing payments due from appellant to respondent from March 1, 1946, to and including June 10, 1949 (the date of the aforesaid Nevada divorce), together with interest in the sum of $6,203.54. From such order, appellant prosecutes this appeal.
 [1] As his first ground for reversal, appellant earnestly urges that the trial court committed prejudicial error in holding that the Mexican divorce decree entered in March, 1945 was not controlling to terminate the support payments under the aforesaid pendente lite order for separate maintenance and that the date of the Nevada divorce, entered in June, 1949 constituted the effective date of termination.
 Under the facts and circumstances present in the controversy now engaging our attention, we are satisfied that the learned trial judge correctly disposed of appellant's contention. We therefore adopt as part of this opinion the following language taken from the "memorandum" filed by the judge of the court below when the cause was decided by him:
 "We need not concern ourselves here with the validity of the Mexican decree. Subsequent to its entry, Mr. Douglas secured a second divorce from Mrs. Douglas, this time in Nevada. (Parenthetically, in other proceedings in this action he asserts the validity of and relies upon the Nevada judgment.) The latter decree was a conclusive determination of the status of the parties as husband and wife from the date of the marriage to the dissolution of that relation by the Nevada court. (Estate of Lee, 200 Cal. 310, 314 [253 P. 145]). It being the later of the two adjudications, it is controlling. Mr. Douglas by his proceedings in Nevada waived his right to assert the benefit of the Mexican decree (Dillard v. McKnight, 34 Cal.2d 209, 219 [209 P.2d 387, 11 A.L.R.2d 835]; California Bank v. Traeger, 215 Cal. 346, 351 [10 P.2d 51]; 29 Cal.Jur.2d, pages 174 and 258.)"
 "In support of the Mexican judgment, counsel for Mr Douglas rely upon a dismissal 'with prejudice' by Mrs. Douglas on September 14, 1954, of a California action directly attacking it. This dismissal, they assert, was effective as a retraxit and was res judicata on the issue of the validity of *236 the Mexican decree. (Citing Gagnon Co. v. Nevada Desert Inn, 45 Cal.2d 448 [289 P.2d 466].) The court is thus called upon in effect to declare an estoppel upon an estoppel upon an estoppel. There are two answers to the above: (a) The California action attacked both the Mexican and the Nevada judgments. If the dismissal operated as an adjudication, it determined the validity of both decrees, and as above indicated, the later of the two must control as to the status of the parties; (b) The record here shows a fourth adjudication. After such dismissal 'with prejudice' this court in this very action made a final order establishing the validity of the Nevada judgment. (See the November 10, 1954, order of Judge Philbrick McCoy.) ..."
 "The Nevada judgment, if valid, terminated eo instante the award of temporary maintenance herein. (Chirgwin v. Chirgwin, 26 Cal.App.2d 506 [79 P.2d 772]; 28 A.L.R.2d 1402; 42 C.J.S. 274.) Mrs. Douglas attacked the jurisdiction of the Nevada Court in that forum. She is thus foreclosed from attacking it here. (Tomkins v. Tomkins, 89 Cal.App.2d 243, 247-8 [200 P.2d 821], and state and federal cases there cited.) Additionally, as heretofore stated, the Nevada decree was found valid by a final order of this court on November 10, 1954. Accordingly, any recovery herein must be based on amounts accruing prior to June 10, 1949, the date of the Nevada judgment."
 [2] We are not impressed with appellant's argument that because divorce laws are established for "public reasons" (Civ. Code, 3513), and the state has an interest in the marital status, its continuance and its dissolution, the provisions of his Mexican divorce could not be waived by him. When appellant sought the aid of the Nevada court in seeking dissolution of his marriage he represented to that court that respondent herein was his lawful wife. He is an attorney at law, and whatever may have been his reasons, it is manifest he did not rely upon the validity of his Mexican divorce when he invoked the powers of the Nevada court to dissolve the bonds of matrimony existing between him and respondent herein. It would be a mockery of laws governing marriage and divorce and amount to a trifling with judicial process and tribunals if a person might obtain a series of divorces in various jurisdictions and use one of them when that particular decree might, in his opinion, best serve his purpose or interest. Law and good morals should be one and inseparable. The trial court was correct in holding that the Nevada *237 decree having been found valid by a final order of the courts of this state, was the proper one to be used in determining when appellant was relieved of his obligations under the pendente lite order for support herein.
 In an opinion this day filed (Douglas v. Douglas, ante, p. 225 [330 P.2d 665]) we affirmed an order of the Superior Court of Los Angeles County made March 5, 1957, vacating an ex parte judgment of said court and a writ of execution obtained by respondent herein against appellant herein, to collect support money allegedly due the former under the aforesaid pendente lite order of October 30, 1944 on appellant wife's separate maintenance cross-complaint, from July 20, 1951 to July 20, 1956. In the case just cited (ante, p. 225 [330 P.2d 665]) we held that the right of respondent herein to support money under her cross-complaint terminated with the dismissal of that pleading by the court below on July 7, 1949. However, since the order now engaging our attention concerns alleged unpaid pendente lite support money payments from March 1, 1946 to June 10, 1949, such order is unaffected by our holding in Douglas v. Douglas, ante, p. 225 [330 P.2d 665] that the right of respondent herein to such payments did not terminate until July 7, 1949.
 [3a] We come now to appellant's final contention that the court abused its discretion in granting respondent's motion for issuance of execution under section 685 of the Code of Civil Procedure.
 Without question, appellant introduced evidence that he was in Los Angeles and employed by Telegraph Delivery Service in January, 1953, and thereafter. That respondent knew of appellant's residence in Los Angeles and served him with a series of legal documents during this period. That during the time he lived in New York, appellant made frequent trips to Los Angeles. That on one of such occasions, respondent took advantage of appellant's presence in Los Angeles to have him arrested through the district attorney's office for failure to provide for a child who respondent insisted was appellant's son.
 However, these assertions by appellant were challenged and contradicted by respondent in her supporting affidavits and oral testimony at the hearing. We have heretofore narrated in some detail the contents of respondent's supporting affidavit and shall not here repeat them. Suffice it to say that there was presented to the judge of the court below a distinct conflict on the question of whether respondent had set forth *238 good and sufficient reasons for her failure to proceed in compliance with the provisions of section 681 of the Code of Civil Procedure.
 [4] The rule is well settled that the discretionary power of a court in proceedings of this character will not be disturbed unless a clear abuse of discretion is made to appear. Even though the correctness of the ruling may be doubted, nevertheless, an appellate tribunal is not warranted in substituting its own opinion, for to do so would divest the trier of facts of that discretionary power primarily reposed in him. In the instant case the trial court had before it not only the affidavits of the parties, but had the opportunity to hear their oral testimony, to observe their demeanor on the witness stand, their candor or lack of candor, and to form an opinion of the verity of both the oral testimony and the averments in their respective affidavits. [5] The prerogatives of an appellate court on appeal when reviewing the sufficiency of the evidence to support the conclusion arrived at by the trial court is thus stated in Estate of Bristol, 23 Cal.2d 221, 223, 224 [143 P.2d 689]:
 "The rule as to our province is: 'In reviewing the evidence ... all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. [6] It is an elementary ... principle of law, and when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. [7] When two or more inferences can be reasonable deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Crawford v. Southern Pacific Co., 3 Cal.2d 427 [45 P.2d 183].) The rule quoted is as applicable in reviewing the findings of a judge, as it is when considering a jury's verdict. The critical word in the definition is 'substantial'; it is a door which can lead as readily to abuse as to practical or enlightened justice. [8] It is common knowledge among judges and lawyers that many cases are determined to the entire satisfaction of trial judges or juries, on their factual issues, by evidence which is overwhelming in its persuasiveness but which may appear relatively unsubstantial--if it can be reflected at all--in a phonographic record. Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should *239 resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical. ..."
 (See also Jackson v. de Benedetti, 39 Cal.App.2d 574, 579 [103 P.2d 990].)
 [3b] As to his appraisal of the intrinsic value of the conflicting evidence, and the credibility of the affidavits and testimony of appellant and respondent herein, the trial judge in his "memorandum," had this to say:
 "#2. The Court is completely satisfied that Mrs. Douglas has shown due and reasonable diligence in pursuing her statutory remedies. A review of the voluminous evidence submitted to and carefully considered by the Court is not necessary to this memo. Suffice it to say that Mr. Douglas (appellant), by every means at his disposal (including the absenting of himself from California and the transfer of his assets to his children), has sought to avoid, and has successfully avoided, the payment of the amounts accruing herein. The evidence discloses numerous efforts on the part of Mrs. Douglas to uncover assets of Mr. Douglas and to enforce payment of sums owing her. The court is convinced that the issuance of writs of execution during the past years would have been productive of no recovery. ..."
 "#3. ... The Court is unwilling to accept Mr. Douglas' bare and unsupported statements regarding payments totalling $8000.00. His testimony and witness demeanor at best, affords no basis for sustaining any such claim, and the Court does not accept it ..."
 In view of the prevailing rule of law as announced in Estate of Bristol, supra, pages 223, 224, we cannot hold that the conclusion arrived at in the trial court that respondent exercised the due diligence required by section 685 of the Code of Civil Procedure in this case is unsupported by any substantial evidence.
 We are inclined to the view that apropos of the case at bar is the following quotation from Demens v. Huene, 89 Cal.App. 748, 753 [265 P. 389], which was quoted with approval in Atkinson v. Atkinson, 35 Cal.App.2d 705, 708 [96 P.2d 824], and in Troendle v. Clinch, 74 Cal.App.2d 480, 484 [169 P.2d 55]:
 "It is the intent of the law, and it would seem the intent, as well, of good morals, that everyone being able should pay his debts. Here we find the debt ripened into a judgment. *240 Several years go by and it is not paid. The law does not contemplate that, the time of the statute of limitations having run, the liability to pay has completely passed. The motion made in this case is provided for by law. There must, then, be something added to the mere fact of the expiration of the time and that the judgment debtors were possessed of personal property, which would move the court to deny the right given by the statute, section 685 of the Code of Civil Procedure. ..."
 Cross-Appeal
 Respondent has filed a cross-appeal from that portion of the order limiting her recovery to the date of June 10, 1949, "under a theory of validity of the Nevada divorce," and also from that portion of the order denying respondent interest on the back payments of alimony pendente lite, from June 10, 1949, to date of the order.
 Cross-appellant relies heavily on the case of Lewis v. Lewis, 49 Cal.2d 389 [317 P.2d 987], but in that case the holding was that unless the Nevada court had personal jurisdiction over the wife, it was without power to terminate a husband's obligation to provide her support as required in a preexisting decree of another state (Lewis v. Lewis, supra, p. 393).
 This case is therefore authority for the holding of the trial court that the Mexican divorce decree entered in March, 1945, could not effectively terminate the preexisting pendente lite support order entered by the Superior Court of Los Angeles County, California, on October 30, 1944. This, for the reason that in the Mexican divorce proceeding the court had no personal jurisdiction over cross-appellant.
 [9] However, in the case at bar, as found by the trial court, cross-appellant unsuccessfully attacked the jurisdiction of the Nevada court in that forum, and thereafter the trial court herein made an order, now final, in this very action, adjudicating the validity of the Nevada decree. Whether or not the courts of California were obligated under the full faith and credit clause of the Constitution of the United States to give the Nevada decree recognition, they did so, and having jurisdiction over cross- appellant, the adjudication of the validity of the Nevada decree, was binding upon her. Therefore, it was not error to terminate the pendente lite support payments as of the effective date of the valid Nevada decree.
 Concerning cross-appellant's final contention that the court erroneously denied her interest on the delinquent payments of support money pendente lite to the date of the order appealed *241 from, the record reflects that interest was awarded on said back payments, "from the date of accrual thereof to December 17, 1956," which was the date of the order.
 The order appealed from is affirmed.
 Each party to pay his own costs on appeal.
 Fourt, J., and Lillie, J., concurred.