[Civ. No. 22012. Fourth Dist., Div. One. Dec. 2, 1983.]

DORIS COHEN MORRIS, Plaintiff and Appellant, v.
DAVID G. COHEN, Defendant and Appellant.

508

COUNSEL

Edwin L. Miller, Jr., District Attorney, Ralph J. Fear, Deputy District Attorney, Sidkoff, Pincus, Greenberg & Green, John K. Van de Kamp, Attorney General, Keith I. Motley, and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Appellant.

Duke & Gerstel, Bryan R. Gerstel, Carlos D. Molina and Karen J. Headley for Defendant and Appellant.

OPINION

**STANIFORTH, J.**—David G. Cohen (David) and Doris Cohen Morris (Doris) were Pennsylvania residents, married there in 1950. Two children

were born. The parties separated in 1959, and on October 2 of that year, David was arrested in Pennsylvania and ordered to pay $50 per week for support of Doris and the children. David then posted a $1,000 bond with the court to insure his compliance with the support order and moved to California, where he has since resided. He made seven partial payments on the support order.

On September 30, 1959, Doris filed for divorce, which was finalized on December 7, 1960. No spousal or child support order was entered at that time. On November 4, 1961, Doris married Edwin Morris, who adopted the two children on November 29, 1962.

Fourteen years passed. Then, in 1976, Doris petitioned the Pennsylvania court to reduce arrearages due on the October 2, 1959, support order to a final judgment. David did not appear at the Pennsylvania hearing. The court entered judgment for $8,000 in Doris' favor. David did not appeal or move to vacate the judgment. Represented by the San Diego County District Attorney, Family Support Division, Doris had the Pennsylvania judgment transferred to California and entered as a money judgment under Code of Civil Procedure section 1710.10 on September 30, 1976.

David moved to vacate the California judgment under section 1710.40. His attempt to raise a number of defenses to enforcement of the judgment was rebuffed by the trial court, finding the 1976 Pennsylvania judgment was entitled to full faith and credit under the United States Constitution and David's defenses to enforcement of the judgment should have been raised and litigated before the Pennsylvania court. The trial court then contradicted itself and addressed one of David's defenses, finding Doris' right to spousal support under the 1959 order terminated upon her divorce from David. The court reduced the award to $6,825, based on arbitrary apportionment of the $50 per week as $25 per week for Doris and $25 per week for the children.

David's motion for a new trial was denied, as was Doris' motion for reconsideration of the reduction of the judgment amount. David contends the trial court erred in refusing to consider his affirmative defenses to enforcement of the 1976 judgment. Doris, on cross-appeal, argues the trial court erred in ruling on the merits of the Pennsylvania judgment and reducing the judgment.

DISCUSSION

I

As a preliminary matter, the district attorney's office defends its representation of Doris and her two adult children[1] in their bid to collect a 14-

---

[1] By 1976, when Doris requested the district attorney's representation, both children had reached majority.

year-old debt as mandated by title IV-D (42 U.S.C. §§ 651-660), a 1975 amendment to title IV of the Social Security Act. That amendment, implemented through regulations (45 C.F.R. § 301.0 et seq.) requires that states which participate in the aid to families with dependent children (AFDC) program provide child support collection services to all individuals, regardless of whether they are receiving public assistance, upon the individual's application for these services. (42 U.S.C. § 654(6)(A); 45 C.F.R. § 302.33(a).) California elected to continue its participation in the AFDC program and enacted statutes implementing the title IV-D directive. (See Welf. & Inst. Code, §§ 10600 et seq. and 11200 et seq.)

Title IV of the Social Security Act, "Grants to States for Aid and Services to Needy Families with Children and for Child-Welfare Services," explicitly states the congressional purpose in its enactment as: "[E]ncouraging the care of *dependent* children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy *dependent* children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection . . . ." (42 U.S.C. § 601; italics added.)

█ The congressional scheme does not envision the use of federal funds to aid *adult* children and their parents in securing long overdue support payments. What is envisioned is "protection of dependent children through the provision of assistance payments [and child support collection services] to meet their *current needs.*" (*Burnham* v. *Woods* (1977) 70 Cal.App.3d 667, 673 [139 Cal.Rptr. 4]; see also *Garcia* v. *Swoap* (1976) 63 Cal.App.3d 903 [134 Cal.Rptr. 137], cert. den. 436 U.S. 930 [56 L.Ed.2d 775, 98 S.Ct. 2829].) In electing to participate in the AFDC program, California did not, pursuant to title IV-D, assume the obligation of collecting child support arrearages due parents and their adult children, who are not "dependent children" under title IV. What it did assume, rather, was the obligation to provide child support collection services to families of *minor* children in present need of the arrearages for the children's maintenance, whether or not the families are receiving public assistance.

California did not voluntarily assume the obligation of collecting child support arrearages due parents and their adult children. The California plan for securing past due child support (Welf. & Inst. Code, § 11475.1) is found in chapter 2 of the code, "Aid to Families with Dependent Children" (Welf. & Inst. Code, § 11200 et seq.). The chapter addresses itself exclusively to the needs of the dependent children defined for purposes of the chapter as

"children under the age of 18 years . . . in need [of aid or services] because they have been deprived of parental support or care . . . ." (Welf. & Inst. Code, § 11250.)

While Welfare and Institutions Code section 11475.1 rather ambiguously provides: "Each county shall maintain a single organizational unit located in the office of the district attorney which shall have responsibility for promptly and effectively enforcing child and spousal support obligations . . . . The district attorney shall take appropriate action, both civil and criminal, to enforce [the child support] obligation when the child and the spouse or former spouse is receiving public assistance. When the child is not receiving public assistance, the district attorney shall take appropriate action to enforce the child support obligation. There shall be prominently displayed in every public area of every office of the units established by this section a notice, in clear and simple language prescribed by the Director of Social Services, that child support enforcement services are provided *to all individuals* [italics added] whether or not they are recipients of public social services and that spousal support enforcement services are available to those receiving public social services," the language "to all individuals" must be construed, in accordance with the comprehensive scheme of Chapter 2 of the Welfare and Institutions Code, to encompass individuals with *dependent children* (that is, children under the age of 18 who are in need because they lack parental support and care [see Welf. & Inst. Code, § 11250]) for whose benefit the child support order now sought to be enforced was entered.

Counsel have not cited and we have not found authority interpreting section 11475.1 on this point. The district attorney relies on *Carter* v. *Morrow* (W.D.N. Car. 1981) 526 F.Supp. 1225 to support his position that the district attorney's office is required, under federal law, to represent Doris. The case is inapposite. *Carter* held that failure of defendant state officials to provide plaintiffs, none of whom were currently receiving AFDC, with all necessary and appropriate child support enforcement services violated the provisions of title IV-D. However, each of the *Carter* plaintiffs was found to be "in immediate need of child support payments from absent fathers in order to provide for their minor children." (*Id.,* at p. 1226.)

What is involved here is not the enforcement of a parent's obligation to support minor children in immediate need of child support payments but the collection of a 14-year-old debt owed an ex-wife for the support of now adult children. Federal law does not require, and California law does not authorize, the district attorney to represent Doris in this litigation. In seeking to enforce the 1976 Pennsylvania judgment on behalf of Doris and her two adult children, the district attorney's office quite inappropriately acted as a collection agency, at the taxpayer's expense.

We proceed to address the parties' contentions with regard to enforcement of the judgment in this state, as we foresee the possibility of Doris retaining private counsel and again attempting to enter the 1976 judgment as a sister-state judgment in the California courts.

## II

The district attorney has brought this action under the 1974 Sister State Money-Judgments Act (SSMJA). (Code Civ. Proc., §§ 1710.10-1710.65.) David argues on appeal that Doris' enforcement action in fact falls under the Revised Uniform Reciprocal Enforcement of Support Act of 1968 (RURESA), enacted in California as Code of Civil Procedure sections 1650-1699, rather than under the general act for enforcement of sister state judgments. Doris' action indeed falls under RURESA.

A judgment may be enforced as a sister state judgment if it is "part of any judgment, decree, or order of a court of a state of the United States, other than California, which requires the payment of money, *but does not include a support order as defined in subdivision (k) of Section 1653.*" (§ 1710.10, subd. (c); italics added.) Support orders are to be enforced under RURESA. Code of Civil Procedure section 1653, subdivision (k), part of RURESA, defines "support order" as "any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered."

*Liebow* v. *Superior Court* (1981) 120 Cal.App.3d 573 [175 Cal.Rptr. 26], considered the issue here presented — whether a money judgment for *support arrearages* is enforceable under SSMJA or RURESA. The appellate court held that a judgment for support arrearages, because it is a final judgment for a liquidated sum of money, is not a "support order" and therefore not excluded from enforcement under SSMJA. The court construed Code of Civil Procedure section 1653, subdivision (k), to read " 'any judgment, decree, or order of support in favor of an obligee whether temporary or final, [*and*] subject to modification, revocation, or remission . . . ,' " (*Liebow, supra,* at p. 578) finding that "to construe these two groups disjunctively would yield the illogical result of causing *any* judgment to fall within the definition because all judgments are either temporary or final." (*Id.,* at p. 580.) Our reading of the two acts, however, leads to the conclusion that this "illogical result" is just what the RURESA drafters had in mind. The design of the legislation is such that *all* support orders, whether for sums presently due or past due and unpaid, whether final or modifiable, are to be enforced under RURESA rather than under SSMJA.

We look first to the express purposes of the statute. "The purposes of this title are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." (Code Civ. Proc., § 1652.)

"Duty of support," as used in RURESA, is defined as: "[A] duty of support whether imposed or imposable by law or by order, decree, or judgment of any court *whether interlocutory or final* or whether incidental to a proceeding for dissolution of marriage, judgment of nullity, or for legal separation, or to an action for divorce, separation, separate maintenance, or otherwise, and *includes the duty to pay arrearages of support past due and unpaid.*" (Code Civ. Proc., § 1653, subd. (b); italics added.)

Additionally, Code of Civil Procedure section 1672 provides, in pertinent part: "All duties of support, *including the duty to pay arrearages,* are enforceable by an action under this title, including a proceeding for civil contempt." (Italics added.)

A straightforward reading of RURESA as enacted by the California Legislature makes clear that a judgment for support arrearages, despite the fact that it is a nonmodifiable final judgment for a liquidated sum of money (attributes of judgments traditionally enforced under SSMJA), is to be enforced by an action under RURESA, Code of Civil Procedure sections 1650-1699. To interpret section 1653, subdivision (k), as did the *Liebow* court, as including in the definition of "support order" only those orders that are temporary or final *and* modifiable, contradicts the language of the preceding subdivision (b), which provides, by implication, that *all* final judgments imposing a duty of support are within the ambit of RURESA, not simply those final judgments "subject to modification, revocation, or remission . . . ." (§ 1653, subd. (k).) And, this interpretation of the provisions at issue furthers RURESA's purpose of providing a means of enforcing *all* support obligations of obligors located outside the jurisdiction in which dependent spouses and children are present. (See *Mehrstein v. Mehrstein* (1966) 245 Cal.App.2d 646 [54 Cal.Rptr. 65].)

### III

Code of Civil Procedure section 1699, subdivision (a), permits the judgment debtor to raise all defenses to enforcement of a support order under RURESA that he or she would be entitled to raise to enforcement of a support order issued by a court of this state: "Upon registration the registered foreign support orders shall be treated in the same manner as a support order issued by a court of this state. *It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or*

*staying as a support order of this state* and *may be enforced and satisfied in like manner.''* (Italics added.)

■ One of the affirmative defenses David attempted to raise in the trial court was Doris' action on the Pennsylvania judgment is barred by the California statute of limitations. This defense should have been considered by the trial court; David's failure to appear at the Pennsylvania hearing, to appeal or move to vacate the Pennsylvania judgment, does not bar him from raising defenses to its enforcement under Code of Civil Procedure section 1699, subdivision (a). (Compare *Magalnick* v. *Magalnick* (1979) 98 Cal.App.3d 753, 758 [159 Cal.Rptr. 889].)

In *Farmers & Merchants Trust Co.* v. *Madeira* (1968) 261 Cal.App.2d 503 [68 Cal.Rptr. 184], the appellate court held the defense of the California statute of limitations, Code of Civil Procedure section 337.5, subdivision 3, could be raised in an action to enforce a sister state judgment for support, brought in California, and when a judgment provides for periodic support payments "the applicable statute of limitations runs against each installment as it falls due *(DeUprey* v. *DeUprey,* 23 Cal. 352)." *(Id.,* at p. 516.)

■ The applicable statute of limitations on enforcement of the instant judgment is 10 years. (Code Civ. Proc., § 337.5, subd. 3.) The final installment of support which Doris claims David owed under the 1959 Pennsylvania support order fell due in late 1962. Clearly, California's 10-year statute of limitations has long since run on that final installment and all prior installments due under the 1959 order.[2]

Doris' reliance on the California Supreme Court decision of *Lewis* v. *Lewis* (1957) 49 Cal.2d 389 [317 P.2d 987] for the proposition entry of the 1976 Pennsylvania judgment for support arrearages revived the 1959 order so that we must measure the statute of limitations period from 1976 is misplaced.

*Lewis* involved a 1947 Illinois support order which had its arrearages reduced to a judgment by the same Illinois court in 1950. In 1954 the plaintiff sought to enter both judgments in California and to recover the

---

[2]The argument that the statute was tolled under Code of Civil Procedure section 352, subdivision (a), during the children's minority and therefore has not yet run on the child support portion of the order is unavailing. Doris' purpose in securing arrearages due under the child support portion of the 1959 order is presumably to obtain reimbursement for having supported the children out of her own funds. Doris is therefore deemed the beneficiary of the arrearages and the statute of limitations period is measured only as to her. (See *In re Marriage of Utigard* (1981) 126 Cal.App.3d 133 [178 Cal.Rptr. 546]; *Di Corpo* v. *Di Corpo* (1948) 33 Cal.2d 195 [200 P.2d 529].)

amount due thereon. Defendant opposed entry of the judgment and contended recovery upon the 1947 judgment, for payments due more than five years before commencement of the *Lewis* action in California, was barred by the five-year statute of limitations on actions on judgments, California Code of Civil Procedure section 336, subdivision 1 (now 10 years, under Code Civ. Proc., § 337.5, subd. 3). The *Lewis* court ruled: "Having acquired jurisdiction of the subject matter and of the parties in the divorce action brought by defendant, the Illinois court retained jurisdiction to modify and enforce its support order. [Citations.] It therefore had jurisdiction to enter the supplemental 'judgment order' of December 12, 1950, fixing the amount of accrued arrearages. . . .

"If defendant had no notice of the 1950 proceedings, the 'judgment order' of December 12, 1950, is unenforceable, and plaintiff's rights must be determined under the judgment of December 12, 1947. Recovery for payments due thereunder prior to August 26, 1949 [five years prior to filing of the California enforcement action], is barred by the five-year statute of limitations found prior to 1953 in subdivision 1 of section 336 of the Code of Civil Procedure. [Citation.] If defendant had notice of the 1950 proceedings, the 'judgment order' of December 12, 1950, is a valid judgment entitled to recognition under the full faith and credit clause of the United States Constitution, and the applicable statute of limitations is the 10-year statute found in section 337.5 of the Code of Civil Procedure as amended in 1953. (See *Mudd* v. *McColgan,* 30 Cal.2d 463, 468 . . . .)" (49 Cal.2d at pp. 395-397.)

The *Lewis* court citation to *Mudd* v. *McColgan* (30 Cal.2d 463 [183 P.2d 10]) makes clear its decision was bottomed on the fact California's then five-year statute of limitations had not run on the 1947 judgment at the time the Illinois court entered its 1950 judgment, extending the statute of limitations. As the *Mudd* court noted: "[A] party has no vested right in the running of a statute of limitation prior to its expiration. He [or she] is deemed to suffer no injury if, at the time of an amendment extending the period of limitation for recovery, he [or she] is under obligation to pay." (*Mudd, supra,* at p. 468.)

Here, in contrast, when the Pennsylvania court entered its 1976 order, 14 years had elapsed since the running of the California statute of limitations on the final payment due under the 1959 order. In the *Mudd* court's terminology, David indeed had a vested right in the running of the statute as of 1976, and *Lewis* is inapposite. The County of San Diego District Attorney, Family Support Division, lacks standing to enforce the 1976 Pennsylvania

judgment and the claim is precluded by the California statute of limitations. David is entitled to relief from enforcement.[3]

## DISPOSITION

The judgment is reversed with instructions to the trial court to enter judgment for David.

Cologne, Acting P. J., and Wiener, J., concurred.

The petition of plaintiff and appellant for a hearing by the Supreme Court was denied February 1, 1984.

---

[3]In light of the success of the statute of limitations defense, we decline to pass on David's additional defenses of lack of notice, lack of personal jurisdiction, satisfaction of the judgment and excessive judgment amount, or on Doris' claims of error regarding the trial court's reduction of the judgment amount.