**T. SOTO, Appellant,**

**v.**

**M. SOTO, Appellee.**

No. 08–95–00222–CV.

Court of Appeals of Texas,
El Paso.

Oct. 17, 1996.

Rehearing Overruled Nov. 27, 1996.

Ralph William Scoggins, El Paso, for Appellant.

Ruben Bustamante, El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

### OPINION

McCLURE, Justice.

We overrule Appellant's Motion for Rehearing, withdraw our opinion of August 15, 1996, and substitute this opinion in its stead. This is an appeal from a judgment entered in favor of Husband[1] after a bench trial in a post-divorce partition suit. We affirm.

### SUMMARY OF THE EVIDENCE

On May 15, 1985, Wife and Husband were divorced. Regarding the estate of the parties, the divorce decree provided as follows:

IT IS DECREED that the estate of the parties be divided as follows:

Petitioner [Wife] is awarded the following as Petitioner's sole and separate prop-

---

1. Because of the prior marital status of the par- ties, we shall refer to them as Husband and Wife.

erty, and Respondent is hereby divested of all right, title, and interest in and to such property:

All property in Petitioner's possession.[2]

Respondent [Husband] is awarded the following as Respondent's sole and separate property, and Petitioner is hereby divested of all right, title, and interest in and to such property:

All real and personal property in Respondent's possession.

All clothing, jewelry, and other personal effects in the possession of or subject to the control of Respondent.

On November 29, 1988, Wife filed suit to partition property allegedly not divided upon divorce. Following a bench trial, the trial court entered judgment against Wife, finding that "the divorce decree is not un[sic]ambiguous and therefore not subject to partition by the Plaintiff and as such partition is an inappropriate remedy."

### AMBIGUITY OF DECREE

Wife attacks the judgment of the trial court in four points of error. In her first point of error, Wife contends that the divorce decree is ambiguous as a matter of law. We agree.

■ The Supreme Court of Texas has consistently ruled that community property not divided upon divorce is held by the former spouses as tenants in common and that partition is an appropriate remedy to effectu-

ate a post-divorce division. *Harrell v. Harrell,* 692 S.W.2d 876 (Tex.1985); *Busby v. Busby,* 457 S.W.2d 551, 554–55 (Tex.1970). Partition is inappropriate if the decree purports to divide the entire community estate, is unambiguous, and neither party directly appeals. *Acosta v. Acosta,* 836 S.W.2d 652, 654 (Tex.App.—El Paso 1992, writ denied).

■ A division of the community estate may be effectuated by court order following a contested evidentiary hearing or by an agreement of the parties. Where the divorce decree is not a consent or agreed judgment, it is controlled by the rules relating to the construction of judgments as opposed to the rules relating to the construction of contracts. *Acosta,* 836 S.W.2d at 654; *Haworth v. Haworth,* 795 S.W.2d 296, 298 (Tex.App.—Houston [14th Dist.] 1990, no writ). In general, a judgment should be construed in the same manner as other written instruments with a view toward harmonizing and giving effect to all that the court has written. *Haworth,* 795 S.W.2d at 298; *Constance v. Constance,* 544 S.W.2d 659, 660 (Tex.1976). Intent of the parties is immaterial in the absence of a consent or agreed judgment. *Acosta,* 836 S.W.2d at 654; *Lohse v. Cheatham,* 705 S.W.2d 721, 726 (Tex.App.—San Antonio 1986, writ dism'd). If the judgment taken as a whole is unambiguous, the trial court is required to declare the effect of the decree "in light of the literal meaning of the language used." *Acosta,* 836 S.W.2d at 654; *Haworth,* 795

---

**2.** Apparently, Wife did not want any of the real property at the time of the divorce because (1) she wanted her son to inherit the property from his father, and/or (2) she was moving to Dallas to be with her soon-to-be new husband. Wife testified as follows:

> Q. All right. Now, back to April the 30th of 1983[sic]. What was your understanding after you testified, as to the final hearing, as to the disbursement of the property? What was to happen to the four pieces of property that we are talking about: Morocco, Karachi Way and Papaya?
> A. I made the Court an acknowledgment of all properties on my own. My attorney did not answer anything.
> Q. All right. I understand that.
> A. I declared them and I said that being that I was not educated and that my job would not gross me as much as Richard's did, that I only thought it was fair for Mr. Soto to

remain and hang on and pass to Richard Soto and the properties, because I did not want him suffering along with myself.

Regarding conversations between Wife and Husband about the disposition of the property, Husband asserted the following:

> Q. Back to the conversation at the Fina Truck Stop. What did you tell her? What did she tell you?
> A. She said that she was not sure. That—but that she was going—that she was not going to return. She was not going to come back. She was going to leave me everything. I had worked all of my life, that I had worked all of my life to pay for what I have. That is all that she told me.
> Q. Okay. So there, at that time, she did not want any of the property, is that correct? That is what she told you?
> A. That's what she told me.

S.W.2d at 298; *Lohse,* 705 S.W.2d at 726. If a provision is ambiguous, the court may review the record to determine its meaning. *Haworth,* 795 S.W.2d at 298.

On the other hand, divorcing couples may enter into agreements to facilitate property division. *See* TEX.FAM.CODE ANN. § 3.631(a)(Vernon 1993)("To promote amicable settlement of disputes on the divorce or annulment of a marriage, the parties may enter into a written agreement concerning the division of all property and liabilities of the parties and maintenance of either of them."). These agreements are considered contracts and their legal force and meaning are governed by contract law. *See Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986)("A marital property agreement, although incorporated into a final divorce decree, is treated as a contract and its legal force and meaning are governed by the law of contracts."); *Traylor v. Traylor,* 789 S.W.2d 701, 702–03 (Tex.App.—Texarkana 1990, no writ)(stating that "such agreements legal force, effect and meaning are governed by the law of contracts and not by the law of judgments"). Upon approval of the agreement, the court may include the agreement, as stipulated by the parties, in the divorce decree or incorporate it by reference. *See* TEX.FAM.CODE ANN. § 3.631(b)(c). When so included or incorporated, the divorce decree becomes a consent judgment, subject to the same degree of finality and binding force as a judgment rendered in an adversary proceeding. *See McCray v. McCray,* 584 S.W.2d 279, 280–81 (Tex.1979); *Chess v. Chess,* 627 S.W.2d 513, 515 (Tex.App.—Corpus Christi 1982, no writ)(stating that once the property settlement agreement was approved by the court, it was "no longer merely a contract between [the parties, but became] the judgment of the court"); *see also* KAZEN'S PRACTICAL FAMILY LAW MANUAL § 3.403, 3.404 (Barbara Anne Kazen ed., 1996). Therefore, the principles of res judicata and collateral estoppel apply. *See Thompson v. Thompson,* 500 S.W.2d 203, 208–09 (Tex.Civ.App.—Dallas 1973, no writ).

Consent judgments look for their interpretation to the law of contracts. *See Harvey v. Harvey,* 905 S.W.2d 760, 764 (Tex. App.—Austin 1995, no writ)("[W]hen a di-

vorce decree is a consent decree or agreed judgment, 'it must be interpreted as if it were a contract between the parties, and the interpretation thereof is governed by the laws relating to contracts.' ") *citing Biaza v. Simon,* 879 S.W.2d 349 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Miller v. Miller,* 700 S.W.2d 941, 951 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)("An agreed judgment must be interpreted as if it were a contract between the parties, and the interpretation of the judgment is governed by the laws relating to contracts."). When construing an agreement incident to divorce, a court must look to the intentions of the parties as they are manifested in the written agreement. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Miller,* 700 S.W.2d at 951; *Thompson,* 500 S.W.2d at 207 (stating that the court was "bound by the express stated intent of the parties as manifested within the four corners of the instrument itself"). The entire agreement must be interpreted in such a way that all its provisions are given effect and that none are rendered meaningless. *See Praeger v. Wilson,* 721 S.W.2d 597, 600–01 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); *see also Coker,* 650 S.W.2d at 393. In other words, every attempt must be made to harmonize all the provisions within the agreement. *See Coker,* 650 S.W.2d at 393. Each provision must be considered with reference to the whole agreement. *Id.* However, terms stated earlier in the agreement are favored over subsequent terms. *Id.* Finally, only if the agreement is ambiguous may parol evidence be considered. *See Phillips v. Parrish,* 814 S.W.2d 501, 503 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Miller,* 700 S.W.2d at 951. Ambiguity is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *Pierce v. Pierce,* 850 S.W.2d 675, 679 (Tex.App.—El Paso 1993, writ denied). A party who contends that an agreement is ambiguous must prove that the agreement is uncertain, doubtful, or is susceptible to more than one meaning. *Coker,* 650 S.W.2d at 393; *Phillips,* 814 S.W.2d at 503. If a written agreement is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous. *Id; Coker,* 650 S.W.2d at 393.

If the court determines that the language is ambiguous, the interpretation is a fact issue to be resolved by the fact finder.

■■■■ Although Wife's signature appears on the decree, it merely approves the decree as to form. The presence of a party's signature approving the decree does not render the decree an agreed or consent judgment. Accordingly, we apply the rules pertaining to the construction of judgments. As we have noted, the divorce decree awarded Wife "all property in [her] possession" and awarded Husband "all real and personal property in [his] possession." Because the decree before us is not a consent judgment, the trial court was required to declare the effect of the literal meaning of the language used. While Wife was not awarded any real estate, Husband was awarded real estate, modified by the phrase "in his possession". We thus cannot determine whether the court awarded Husband all real estate plus the personal property in his possession or all real property in his possession and all personal property in his possession. Regrettably, the divorce decree does not itemize the real estate, much less denote which spouse was in possession of what property. It is undisputed that Husband was living in, and thus in possession of, one of the properties at the time of divorce. The other properties, however, were either vacant or rented to tenants.[3] As such, it is impossible to determine who was in actual possession of the properties at the time of divorce or otherwise ascertain the ultimate division of the community estate. We find as a matter of law that the divorce decree is ambiguous. Accordingly, we sustain Wife's Point of Error No. One. However, because the trial court made alternative findings, such error is harmless unless the court erred in reaching its alternative findings.

3. Regarding such possession, Wife testified as follows:
 Q. At that time, which property was Mr. Soto and Richard living in?
 A. The 9990 Morocco Circle.
 Q. Now, was the 152 Papaya rented.
 A. Yes, it was.
 Q. All right. Who was living at 9992 Morocco at that time?
 A. No one.
 Q. All right. Who was living at 10017 Karachi Way?

### THE MEANING OF "POSSESSION"

■■■■ In her second point of error, Wife contends that the trial court "erred in ruling that at the time of the entry of divorce [Husband] had actual control, access, and possession of all real properties and therefore [Wife] had no legal right to the real property." Wife alleges that because her name was listed on the deeds to the properties, we should determine that she was in "*legal*" [as opposed to "*actual*"] possession of the properties. In other words, because she had "legal" possession of the parcels of real estate, the trial court was precluded as a matter of law from finding that Husband had possession and control of the properties. As a result, she claims that the divorce decree did not divest her of any property rights such that the parties hold the property as tenants in common. This may be true in the context of a tenant occupying the owner's property. *See Germania Mutual Aid Association v. Schaefer*, 275 S.W.2d 137, 139 (Tex. Civ.App.—Eastland 1955, no writ)("It is not necessary for the holder of legal title to personally occupy his premises to be in legal possession thereof.... An owner is considered to have legal possession of his property when it is occupied by his tenant, or other occupant whose occupancy is with the consent and at the will of the owner."). However, we find no such case law in the context of the recitations of a divorce decree. If a decree awarding property on the basis of possession and control is ineffective in divesting title, then the parties continue to own assets as tenants in common. We find such an argument untenable. Indeed, such a ruling would have broad implications, with the result that countless divorce decrees would be subjected to partition attack.[4]

A. Our son, Eddie Soto.

4. We note Wife's contention in her Motion for Rehearing that if the decree were not silent as to the real estate, Husband would have insisted that Wife execute deeds on the various parcels. She further contends that the deeds are still in the names of Husband and Wife. While the issue of clear title is not before us, at least one court has concluded that a decree of divorce may operate as a muniment of title. *See McCarthy v. George*,

We prefer, instead, the definitions adopted in prior divorce jurisprudence. "Possession," as used in the context of divorce decrees, means the physical control of property, or the power of immediate enjoyment and disposition of property. *Smith v. Smith*, 733 S.W.2d 915 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Dunn v. Dunn*, 703 S.W.2d 317, 319 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Dessommes v. Dessommes*, 505 S.W.2d 673 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.). We recognize the split in authority concerning whether a residuary clause awarding "all property in the possession of" to a particular litigant contemplates a division of retirement benefits. *Compare Tharp v. Tharp*, 772 S.W.2d 467 (Tex.App.—Dallas 1989, no writ); *Carreon v. Morales*, 698 S.W.2d 241 (Tex. App.—El Paso 1985, no writ); and *Jacobs v. Cude*, 641 S.W.2d 258 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.)(all holding that residuary clauses can encompass the division of retirement benefits) *with Ewing v. Ewing*, 739 S.W.2d 470 (Tex.App.—Corpus Christi 1987, no writ); *Dunn*, 703 S.W.2d at 317; *Yeo v. Yeo*, 581 S.W.2d 734 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.); and *Dessommes*, 505 S.W.2d at 673 (holding that residuary clauses do not contemplate the division of retirement benefits). The distinction, that there is no power of physical control or immediate enjoyment of benefits which will mature in the future, is inapplicable here. Accordingly, the question before the trial court was which party had possession and control of the various parcels of real estate at the time of divorce? The trial court answered this factual inquiry in Husband's favor. Because we decline to adopt Wife's theory that she maintained possession of the property as a matter of law, we overrule Wife's Point of Error No. Two.

In Point of Error No. Three, Wife challenges the trial court's finding that she failed to bring suit within the two year statute of limitation.[5] In Point of Error No.

Four, she complains of the court's finding that her suit was barred under the doctrine of laches. Inasmuch as these are alternative findings of the trial court, and even assuming we were to find merit in Wife's arguments, we would nevertheless be precluded from according her the relief she seeks. The trial court has considered the merits of Wife's partition action and ruled in Husband's favor. In short, although the court determined that Wife's suit was precluded by the statute of limitations and by laches, he nevertheless determined that Husband had possession and control of all real property at the time of divorce. We thus need not address these latter two points of error. Having overruled all points of error to the extent they present harmful error, we affirm the judgment of the trial court.

---

623 S.W.2d 772 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.).

5. "The suit must be filed before two years after the date on which a former spouse unequivocally repudiates the existence of the ownership interest of and communicates that repudiation to the other spouse. The two-year limitations period is tolled for the period of time that a court of this state does not have jurisdiction over the former spouses or over the property." Tex.Fam.Code Ann. § 3.90(c).