Rodolfo RIVERA, Appellant,

v.

**OFFICE OF THE ATTORNEY GENERAL, Appellee.**

No. 01–96–00863–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 11, 1997.

Rehearing Overruled Jan. 20, 1998.

Henry E. Allee, Houston, for Appellant.

Angela Marie Lancelin, Houston, for Appellee.

Before MIRABAL, HEDGES and ANDELL, JJ.

## EN BANC OPINION

MIRABAL, Justice.

The attorney general brought an action against appellant, Rodolfo Rivera, to reduce his unpaid child support obligation to judgment. After a bench trial, the trial court rendered judgment against appellant. We affirm.

Appellant and Edelia G. Rivera were divorced on May 4, 1977. At the time of the divorce, their only child, Elithia Ann, was two and a half years old. The trial court appointed Edelia as the child's managing conservator, and appellant as possessory conservator. The couple agreed appellant would pay Edelia child support of $200 per month. The trial court incorporated their agreement into its decree, but the decree did not include language specifically ordering appellant to pay child support.

In February 1980, the trial court held appellant in contempt for not paying child support. In April 1980, the trial court again held appellant in contempt for not paying child support. In 1991, appellant stopped making payments altogether after he became disabled.

Edelia sought assistance in collecting the unpaid support from the attorney general's child support enforcement program. On May 25, 1995, when Elithia was 20 years old, the attorney general filed a motion to reduce unpaid child support to judgment. After a bench trial, the trial court rendered judgment against appellant, ordering him to pay the sum of $5,033.00 in child support arrearages.

In point of error one, appellant asserts the attorney general had neither the standing nor the authority to seek to reduce the unpaid child support to judgment because Elithia is an emancipated adult for whom such services are not permitted by federal law. He bases his argument on the federal definition of a "needy, dependent child" as one who is under the age of 18.

Appellant attempts to apply Title IV–A[1] definitions and law that are inapplicable to Title IV–D[2] actions. The attorney general has independent standing to bring a suit affecting the parent-child relationship. *Attorney General v. Lavan*, 833 S.W.2d 952, 955 (Tex.1992); TEX. FAM.CODE ANN. §§ 102.003(5), 102.007 (Vernon 1996). An enforcement action to reduce unpaid child support to judgment brought after a child's emancipation is authorized by the Family Code. *See* TEX. FAM.CODE ANN. §§ 157.263, 157.005(b) (Vernon 1996).

Appellant cites *Morris v. Cohen*, 149 Cal.App.3d 507, 196 Cal.Rptr. 834, 837 (1983), for the proposition that federal funds were not intended to be used to aid adult

---

1. *See* 42 U.S.C.A. § 607 (West 1985).

2. *See* 42 U.S.C.A. § 651 (West 1985).

children to secure long-overdue support payments. In California, however, action on behalf of an adult child is not authorized by state law, as it is in Texas. Federal law mandates provision of Title IV–D services to any individual who applies for them, without regard to Title IV–A eligibility. *See* 42 U.S.C.A. § 651 (West 1985). Moreover, child support orders are interpreted by applying the law of the issuing state. *See* 28 U.S.C.A.. § 1738B(g)(2) (West Supp.1996).

We hold the attorney general was authorized to bring this suit. Accordingly, we overrule point of error one.

■ In point of error three, appellant asserts the trial court erred in rendering judgment against him because oral agreements, the terms of which are not to be performed within one year, are unenforceable. He relies upon the Statute of Frauds and rule 11 of the Rules of Civil Procedure to support this point. However, appellant misconstrues the agreement. The couple's agreement was written; that a copy of it cannot be found does not transform it into an oral agreement.

The record does not contain a copy of the couple's agreement. Either none was ever filed with the trial court, or it has been lost. Despite a diligent search, the trial court clerk cannot produce the file copy, and the parties have not produced a copy. On appeal, appellant disputes the existence of a written agreement, but his trial court testimony was ambiguous. He testified he agreed to pay $200 per month in child support. When asked if there was a written document, he replied, "I don't think I have it." Edelia testified there was a written agreement, signed by the parties and by the attorney who represented them both, but she could not produce a copy.

■ Appellant contends the trial court had no evidence of the agreement or of its terms. The record does not support this contention. Edelia's testimony, the incorporation by reference of the couple's agreement into the divorce decree, and appellant's years of payments in accordance with the agreement, are all evidence of its existence and its terms.

We overrule point of error three.

■ In point of error two, appellant asserts the trial court erred in reducing the arrearage to judgment because no child support order has ever been entered, nor was any written agreement produced concerning support.

■ The May 4, 1977 divorce decree states:

> The Court finds that the parties have entered into a written agreement respecting conservatorship and support of the child, a copy of which is filed in this proceeding, and that the agreement is in the best interest of the child and should be made a part of the order of the Court.

On February 18, 1980, the trial court signed an order holding appellant in contempt for failure to pay child support. This order states in part:

> (1) On the 4th day of May, 1977, Respondent was ordered to make periodical payments for the support of a child.
>
> (2) Respondent has contemptuously disobeyed the order by failing to make periodical payments ordered and is now in arrears in the amount of $1,350 and that Respondent was and is able to comply with the order and should be held in contempt of court.
>
> . . . .
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that ... Respondent be, and is hereby adjudged to be, in contempt of this Court and that punishment therefore be fixed and assessed as confinement in the County Jail of Harris County, Texas, for a period of five (5) days. But as Respondent has fully purged himself from contempt by the payment of the $1,350.00 child support arrearage ... said order is suspended and no confinement shall be ordered.

On April 28, 1980, the trial court signed an "Order Sustaining Motion for Contempt and **Agreed Order**" that states, in part:

> Edelia G. Rivera appeared in person and by attorney to present Movant's motion that Rodolfo U. Rivera, Respondent, be held in contempt for failure to obey an

order of this Court, which order appears in the minutes of the Court.[3]

. . . .

All matters of law and fact having been submitted to the Court, and the Court having heard the evidence and considered the pleadings and arguments of counsel, the Court finds that:

1. Respondent . . . has failed and refused to obey the order of this Court in that Respondent failed to pay movant the sum of $1,000.00 in back child support, and that Respondent was able to comply with the said order; and that Respondent should be held in contempt of court.

. . . .

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED by this Court that Rodolfo U. Rivera be, and is hereby adjudged to be, in contempt of this Court and that Respondent be ordered to pay the back child support, attorney's fees as well as court costs as outlined above.

IT IS FURTHER ORDERED that such aforementioned order be incorporated in an agreement between the parties to this action, such agreement to comprise the following:

1. Respondent is to pay . . . $350 . . . on the arrearage due on March 5 . . .

2. Respondent is to pay the sum of $50.00 per month toward the arrearage, $650.00. Such sum to be paid in one installment of $50.00 to be paid on the 1st day of each month, beginning on April 1, and to continue until the total arrearage is paid.

3. Respondent is to continue to support the [child] of the marriage by following the original order of the court by monthly payments of $200.00 to be paid in one installment of $200.00 on the 1st of each and every month until the [child] attains the age of 18 years.

The next payment is due and payable on the 1st of April . . . through the Harris County Probation Department, Child Support Division, 1115 Congress, Houston, Texas.

A certified copy of this judgment will be sent to the Child Support Division of the Harris County Probation Department so that the records will reflect any new arrangements outlined in the foregoing agreement.

This "Agreed Order" was signed by the attorneys for both parties as "Approved."

Appellant argues that neither the divorce decree, nor the other court orders, included an order to pay child support, and therefore the suit to reduce unpaid child support to judgment was improperly brought. We disagree.

When, as here, an agreement between the parties is incorporated into a divorce decree, the divorce decree is a consent judgment. *Soto v. Soto*, 936 S.W.2d 338, 341 (Tex.App.— El Paso 1996, no writ). Once the agreement of the parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court. *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex.1979, orig.proceeding); *In re Allsup*, 926 S.W.2d 323, 326 (Tex.App.—Texarkana 1996, no writ); TEX. FAM.CODE ANN. § 154.124 (Vernon 1996). It is significant that this is not an appeal from a contempt order; rather, it is an appeal from a money judgment for child support arrearages arising under a consent decree.[4]

In *Richey v. Bolerjack*, the support order was so indefinite, uncertain and ambiguous that it could not be enforced by contempt; however, because it was an *agreed support order*, the case was remanded to the trial court for a new trial to resolve the ambiguity by determining the parties' intent at the time the support order was entered. 594 S.W.2d

---

3. Our record does not contain a copy of that Order, nor a copy of the motion to hold appellant in contempt. It appears that a number of relevant motions, agreements and court orders in the case file were lost or destroyed over the years.

4. The Attorney General filed a "Motion to Reduce Unpaid Child Support to Judgment." The motion alleged that appellant had paid a total of $26,367.00 in child support since February 18, 1980, and that he was in arrears in an amount exceeding $5000.00.

795, 800 (Tex.Civ.App.—Tyler 1980, no writ). The court reasoned:

> Since the prior support judgment is in the nature of an agreed judgment, it must be interpreted as a contract and the interpretation thereof is governed by the laws relating to contracts. The resolution of the ambiguity turns on the intention of the parties which may be shown by the admission of extrinsic evidence.

*Id.* at 799 (citations omitted); *accord Cisneros v. Cisneros*, 787 S.W.2d 550, 551 (Tex. App.—El Paso 1990, no writ) (because the provisions in the decree relating to child support were based on the *written agreement* of the parties, any ambiguity in the decree would be susceptible to interpretation by the trial court after hearing the evidence as in the case of an *agreed judgment*. "This is particularly true where, as in this case, the petitioner is not seeking enforcement by contempt or summary process."). *See also Soto*, 936 S.W.2d at 341, and cases cited therein.

We note that amendments to the Texas Family Code, and post–1989 case law, state that an *arrearage* judgment may be awarded *even if the underlying order is unenforceable by contempt* (regardless of whether the underlying order is a "consent order" or not). *Villanueva v. Office of the Atty. Gen.*, 935 S.W.2d 953, 955 (Tex.App.—San Antonio 1996, no writ); *Gross v. Gross*, 808 S.W.2d 215, 218–19 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Ex parte Tamez*, 801 S.W.2d 18, 19 (Tex.App.—Corpus Christi 1990, orig. proceeding.); TEX. FAM.CODE ANN. § 157.162 (Vernon 1996).

Appellant takes the position that this is not simply a case of the trial court's orders being uncertain or ambiguous; rather, appellant asserts there was *never an order at all* to pay child support in this case. Appellant totally ignores the fact that this case involves a *consent decree*, and at least one subsequent *agreed order* regarding child support.[5]

We agree with the concept expressed by the court in *Soto:*

> Upon approval of the agreement, the court may include the agreement, as stipulated by the parties, in the divorce decree *or incorporate it by reference.* TEX. FAM. CODE ANN. § 3.631(b) & (c). When so included *or incorporated,* the divorce decree becomes a consent judgment, subject to the same degree of finality and binding force as a judgment rendered in an adversary proceeding.

*Soto*, 936 S.W.2d at 341 (emphasis added).[6] In the present case, the divorce decree *incorporated* the agreement regarding child support *by reference,* instead of setting out the child support terms in the decretal portion of the judgment. That is sufficient to make the child support obligations the judgment of the court. Further, the April 28, 1980 "Agreed Order," which was signed by the attorneys for both parties as "approved," specifically set out in the order itself the complete terms of appellant's child support obligations. That, too, was sufficient to make the child support obligations the judgment of the court.

Additionally, in arguing that the trial court never ordered him to pay child support, appellant ignores the fact that we do not even have before us all of the pleadings and orders regarding child support. In the absence of a complete record, we are to presume the trial court's judgment is supported by the record.

---

5. We note that all of the dissent's cases are inapposite because EITHER they involve strictly court-ordered relief, with no agreement of the parties incorporated into the judgment: *Goode v. Avis Rent–A–Car, Inc.*, 832 S.W.2d 202 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Marichal v. Marichal*, 768 S.W.2d 383 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *Ellis v. Mortgage & Trust, Inc.*, 751 S.W.2d 721 (Tex.App.—Fort Worth 1988, no writ); *Stevens v. Cain*, 735 S.W.2d 694 (Tex.App.—Amarillo 1987, orig. proceeding); OR they involve actions for contempt only, not actions for an arrearage judgment: *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967) (orig.proceeding); *In re Dickinson*, 829 S.W.2d 919 (Tex.App.—Amarillo 1992, no writ); *Ex parte Harris*, 649 S.W.2d 389 (Tex.App.—Corpus Christi 1983, orig. proceeding) *Ex parte Duncan*, 462 S.W.2d 336 (Tex.Civ.App.—Houston [1st Dist.] 1970, orig. proceeding).

6. *Soto* involved an agreement regarding division of property, but the concept applies equally to other agreements incorporated by reference into the divorce decree. *See* TEX. FAM.CODE ANN. § 153.007(c) (Vernon 1996) regarding child support agreements.

*Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987); *Garcia v. Arbor Green Owners Ass'n,* 838 S.W.2d 800, 804 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

We overrule appellant's point of error two.

We affirm the judgment.

MIRABAL, J., requested a vote to determine if the case should be heard en banc, pursuant to Tex.R.App. P. 41.2(c).

SCHNEIDER, C.J., and COHEN, MIRABAL, WILSON, TAFT and NUCHIA, JJ., voted for en banc consideration.

O'CONNOR, HEDGES and ANDELL, JJ., voted against en banc consideration.

Joining the en banc opinion are SCHNEIDER, C.J., and COHEN, O'CONNOR, WILSON, TAFT and NUCHIA, JJ.

ANDELL, J., dissents in which HEDGES, J., joins.

ANDELL, Justice, dissenting.

I respectfully dissent. The trial court's judgments are flawed on their face because neither one orders or directs Rivera to pay child support. The divorce decree contains the following paragraph concerning Rivera's child support obligation:

The Court finds that the parties have entered into a written agreement respecting conservatorship and support of the child, a copy of which is filed in this proceeding, and that the agreement is in the best interest of the child and should be made a part of the order of the court.

This paragraph is followed by a decretal paragraph in which the trial court declares it is "ordered, adjudged, and decreed" that Edelia be the managing conservator and Rivera be the possessory conservator. This decretal language, however, addresses only the matter of conservatorship. There are neither details (such as the amount to be paid, the timing of payments, the method of payment, or the length of the obligation) nor any decretal language in regard to child support in the judgment.

The 1980 "Order Sustaining Motion for Contempt and Agreed Order" adjudged Rivera to be in contempt and ordered him to pay back child support and attorney's fees. It also provides:

IT IS FURTHER ORDERED that such aforementioned order be incorporated in an agreement between the parties to this action, such agreement to comprise the following:

. . . .

Respondent is to continue to support the children of the marriage by following the original order of the court by monthly payments of TWO HUNDRED AND NO/100 ($200.00) DOLLARS to be paid in one installment of $200 on the 1st of each and every month until the children attain the age of eighteen (18) years.

Despite the addition of these details concerning payment, this order bears the same defect as the original divorce decree: it contains no decretal language ordering Rivera to pay child support. I consider this to be a critical deficiency. We determine the legal obligations of a party based upon the decretal portion of the judgment.

Recitations preceding the decretal portion of a written instrument, albeit proper inclusions, form no part of the decree. *Stevens v. Cain,* 735 S.W.2d 694, 695 (Tex.App.—Amarillo 1987, orig. proceeding). In Stevens, the relator sought to have the appellate court vacate "the portion of the judgment that declared an elective office vacant." Id. In the judgment, the trial court decreed that a new election be held. Although it found that the office had been vacant for some months, it did not "decree" the office was vacant. Because it did not decree the office was vacant, the appellate court denied relief. Id.;see also *Ex parte Duncan,* 462 S.W.2d 336, 337–38 (Tex.Civ.App.—Houston [1st Dist.] 1970, orig. proceeding) (because no language in judgment "ordering, decreeing, adjudging or otherwise directing" relator to make installment payments, his obligation to pay rested entirely in contract); cf. *Goode v. Avis Rent–A–Car, Inc.,* 832 S.W.2d 202, 203 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (validity of summary judgment does not

rest in recitals; only decretal portion of judgment operates to adjudicate cause); *Ellis v. Mortgage & Trust, Inc.*, 751 S.W.2d 721, 724 (Tex.App.—Fort Worth 1988, no writ) (reference to constructive trust occurred before decretal portion of default judgment, thus was not part of decree).

An action to reduce unpaid support to judgment is a remedy for nonpayment. It does not impose a legal obligation to support a child—that obligation is fixed by the divorce decree, not by the remedy. *In re Dickinson*, 829 S.W.2d 919, 921 (Tex.App.—Amarillo 1992, no writ). The majority sidesteps this issue by terming the judgments "agreed" and "consent" judgments. Without decretal language, however, the trial court simply memorialized the couple's agreement without imposing a legal obligation to pay. Parties are free to create agreements, but they are not free to create "agreed orders." Only a court of competent jurisdiction may "order" a couple to abide by their agreement. Moreover, the remedies for breaching an agreement are different from the remedies for breaching a court order.

The Corpus Christi court of appeals examined a divorce decree virtually identical to the one before us. See *Ex parte Harris*, 649 S.W.2d 389, 390 (Tex.App.—Corpus Christi 1983, no writ). The decree incorporated a written agreement about support into the decree, but, as here, lacked either details or a decretal paragraph. *Id.* The court was able to review the detailed written agreement between the parties, which we cannot do because that agreement has apparently been lost.

In holding that the decree was not enforceable by contempt, the court noted:

> An inspection of the divorce decree reveals that the trial court failed to order or command Relator to make any child support payments whatsoever. Even though the decree did "incorporate into the divorce" the agreement of the parties which contained provisions of support of the child, such a decree cannot be enforced by contempt absent language ordering, decreeing, adjudging or otherwise directing that Relator make the child support payments.

*Id.* at 391. Here, as in *Harris*, the divorce decree contained no language ordering or otherwise directing Rivera to make the child support payments. In *Marichal v. Marichal*, 768 S.W.2d 383, 384 (Tex.App.—Houston [14th Dist.] 1989, writ denied), the court held a divorce decree was "ambiguous, indefinite, and uncertain" because it recognized the need for support payments but did not actually order the husband to make them. The court held it was error for the trial court to reduce the unpaid child support arrearage to judgment because the divorce decree lacked language ordering the husband to pay support. *Id.*

A contempt order based on an unenforceable decree is void, not merely voidable. *Ex parte Slavin*, 412 S.W.2d 43, 45 (Tex.1967) (orig.prodeeding). A void judgment has no legal effect and cannot serve as the basis for a valid plea of res judicata or for any other plea. *Lawrence Systems, Inc. v. Superior Feeders, Inc.* 880 S.W.2d 203, 211 (Tex.App.—Amarillo 1994, writ denied); accord *Maxwell v. Campbell*, 282 S.W.2d 957, 958 (Tex.Civ.App.—Waco 1955, writ ref'd). Therefore, a void judgment cannot be considered a "valid and final judgment" as contemplated by the definition of collateral estoppel.

Based on the reasoning in *Harris* and *Marichal*, I would hold Rivera was never properly ordered to pay child support and the attorney general could not bring suit on Edelia's behalf to reduce the unpaid support to judgment. I would further hold Rivera is not collaterally estopped from attacking the validity of the child support portion of the divorce decree.

Without decretal language, the couple's agreement may have been an "agreed judgment" but cannot be an "agreed order." Accordingly, Edelia's remedy is to sue on the contract, if its terms so permit. However, while Edelia may sue on the contract, I would hold that the attorney general could not bring an action on her behalf to reduce the unpaid arrears to judgment because there was never a valid order of support rendered by the trial court.

I would sustain point of error two.

I would reverse the judgment of the trial court, vacate the order reducing the unpaid

child support to judgment, and dismiss the attorney general's suit.

HEDGES, J., joins this dissent.